SEALED

1
2
3
4
5
6
7
8
9
10
11
12

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES OF AMERICA,            )
                                     )
               Plaintiff,            )    Case No. 2:13-cr-00018-JCM-GWF
                                     )
vs.                                  )    **SEALED ORDER**
                                     )
KEITH GREGORY,                       )    **Motion to Seal (#226)**
                                     )
               Defendant.            )
_____)

13
14
15
16
17
18

     This matter is before the Court on Defendant Keith Gregory's Motion to Seal Government's Motion to Admit Evidence Pursuant to Fed.R.Evid. 404(b) (#226), filed under seal on December 20, 2013.  The Government filed its Response to Defendant's Motion to Seal (#228), also under seal, on January 3, 2014.  Defendant filed his Reply (#231) under seal on January 10, 2014.  The Court conducted a hearing in this matter on January 14, 2014.  The Court ordered that the record of the hearing be sealed pending the decision on Defendant's motion.

19

## BACKGROUND

20
21
22
23
24
25
26
27
28

     The indictment in this case alleges that the Defendants participated in a conspiracy between August 2003 and February 2009, in violation of 18 U.S.C. §1349, to fraudulently obtain loans on properties within several common interest communities, to fraudulently infiltrate the boards of the homeowners associations ("HOAs") of the communities, and then through control of the HOAs award legal and construction work to co-conspirators. *Indictment (#1)*, ¶9.  The indictment alleges that Defendant Leon Benzer, who was the owner of Silver Lining Construction Company ("Silver Lining" or "SLC"), was a mastermind of the conspiracy and also one of its principal sources of funding.  ¶¶10, 12.  The indictment alleges that Defendant Keith Gregory was a licensed Nevada attorney who did work for Benzer and Silver Lining, "and who through the actions of SLC

controlled boards, was hired and acted as general counsel at Vistana and Sunset Cliffs HOAs and who, at the direction of SLC and Benzer, purported to represent an SLC and Benzer controlled board candidate in an action against an HOA board that SLC and Benzer were attempting to control." ¶13. Among the alleged overt acts in furtherance of the conspiracy, the indictment alleges that Benzer caused a $10,000 bribe payment to be made to Gregory on or about September 24, 2007, and that Gregory sent an email via interstate communication to Benzer on or about September 18, 2008 regarding a petition for recall of the Sunset Cliffs HOA. ¶26, subparts i and p. The indictment further charges Benzer and Gregory with wire fraud, in violation of 18 U.S.C. §1343, in regard to the September 18, 2008 email communication. *Indictment (#1)*, Count 15.

The Government has provided Defendant Gregory with the draft of its motion to admit evidence pursuant to Fed.R.Evid. 404(b).[1] *Motion to Seal (#226), Exhibit A, Government's Draft Motion.* The draft motion sets forth, in greater detail than the indictment, the Government's theory of its case against the defendants, generally, and against Defendant Gregory, in particular. *Draft Motion, pgs. 2-16.* The motion moves for the admission of the following evidence of prior crimes or bad acts allegedly committed by Defendant Gregory:

> *1. 2001 State Bar of Nevada Complaint:* The Government alleges that Gregory was suspended by the State Bar of Nevada in 2001 for lying to his client. The order approving the bar sanction found that Gregory failed to serve a complaint, allowed the statute of limitations to run on the complaint and then persistently lied to the client, telling him that the case had been filed and that a hearing was simply delayed. Gregory's license to practice law was suspended for five years. The suspension was stayed, however, and Gregory was placed on probation. Gregory was issued a public reprimand and was ordered to make restitution and attend ethics training each year during his probation.
>
> *2. 2008 State Bar of Nevada Complaint:* The Government alleges that Gregory was the subject of another State Bar complaint filed in October 2008. The complaint was triggered by a letter from a former employee who stated that Gregory allowed a paralegal to practice law and knowingly paid the paralegal a percentage of

---

[1] Rule 404(b)(1) provides that evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Rule 404(b)(2) provides, however, that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. On request by a defendant in a criminal case, the prosecutor must (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial and (B) do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice."

the attorney's fees recovered on personal injury cases. The State Bar complaint also outlined a concern about Gregory's failure to disclose his relationship with Leon Benzer and Silver Lining before accepting appointment as counsel to the Vistana HOA. Gregory denied the charges in a four page response to the State Bar of Nevada. The Government contends, however, that Gregory's response was replete with false and misleading statements. The Government also alleges that during the course of the HOA investigation, investigators interviewed Gregory's former paralegal who confirmed that Gregory split fees with him based upon an agreed percentage and that the fee splitting arrangement continued even after the State Bar of Nevada formally reprimanded Gregory for this conduct. The State Bar issued a public reprimand to Gregory for his conduct related to the fee splitting with the paralegal.

   *3. Illegal Notarizing Scheme:* The same paralegal involved in the 2008 State Bar complaint also confirmed during the HOA investigation that he was the sole notary in Gregory's office during his employment by Gregory. The paralegal stated that he was asked to notarize documents from time to time when the signatory was not present. Gregory's wife, who was also office manager, asked the paralegal to do this and it happened on more than one occasion. The Government alleges that at least one of the Jasmine HOA declarations involved in the alleged conspiracy was later found to be a forgery and that the signature on that declaration was notarized by Gregory's paralegal.

*Draft Motion, pgs. 16-18.*

   Defendant Gregory intends to oppose the admission of this evidence and has summarized his opposition in his briefs in support of the motion to seal. Defendant argues that the Government's motion should be sealed because anticipated publicity regarding the contents of the Government's motion will prejudice his right to a fair trial under the Sixth Amendment to the United States Constitution. Defendant takes issue not only with the admissibility of the bad acts evidence, but also with the Government's recitation of its version of the case. He argues that this one-sided recitation is unfairly prejudicial to both his and the other defendants' rights to a fair trial. In this regard, Defendant argues that this case has received and will continue to receive significant news media attention and the potential jury pool may be tainted by prejudicial publicity regarding the information disclosed in the Government's motion.[2] Defendant also argues that his reputation . . .

---

   [2] Defendant asserts that "[f]ew cases, if any, in the history of Las Vegas have generated as much pretrial publicity as this case." *Motion to Seal (#226), pg. 3.* An objective look-back at Las Vegas legal history might refute this assertion. This case has, however, received significant news media attention, particularly in the *Las Vegas Review Journal* newspaper.

will be damaged by the publication of the information, regardless of whether he is later convicted or acquitted of the charges against him.

The Government argues that there is a presumption of public access to judicial proceedings and that Defendant Gregory has not met the high burden required to justify the sealing of the Motion to Admit Evidence Pursuant to Fed.R.Evid. 404(b).  The Government also argues that the publication of the information in the motion will not impair Defendant's right to a fair trial and that any prejudice resulting from the publicity can be dealt with by means other than sealing the motion briefs and closing the proceedings, such as careful *voir dire* of prospective jurors.

## DISCUSSION

There is a presumption that the public and the press have a right of access to criminal proceedings and documents filed therein.  *CBS, Inc. v. United States v. District Court*, 765 F.2d 823, 825 (9th Cir. 1985).  This right of access is grounded in the First Amendment and in common law and extends to documents filed in pretrial proceedings as well as the trial itself.  *Id.  See also United States v. Rivera*, 682 F.3d 1223, (9th Cir. 2012).

The common law recognizes a right to "inspect and copy public records and documents, including judicial records and documents."  *United States v. Business of Custer Battlefield Museum*, 658 F.3d 1188, 1192 (9th Cir. 2011), citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).  The first step under the common law right of access is to determine whether the right applies to the type of document at issue.  Only a narrow range of documents are not subject to public access, at all, because they have traditionally been kept secret for important policy reasons.  The courts have identified only two categories of such documents--grand jury transcripts and warrant materials in the midst of a pre-indictment investigation.  *Id.* citing *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) and *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989).  When the common law right of access applies to the type of document at issue, "a 'strong presumption in favor of access' is the starting point."  The party seeking to seal a judicial record bears the burden of overcoming this strong presumption by articulating compelling reasons that outweigh the general history of access and the public policies favoring disclosure.  After considering these interests, if

4

1  the court decides to seal certain judicial records, it must base its decision on a compelling reason

2  and articulate the factual basis for its ruling without relying on hypothesis or conjecture.  *Business*

3  *of Custer Battlefield*, 658 F.3d at 1194-95, citing *Kamakana*, 447 F.3d at 1178 and *Foltz v. State*

4  *Farm*, 331 F.3d 1122, 1135 (9th Cir. 2003).

5      To determine whether there is a First Amendment right of access to a particular kind of

6  hearing or document, the Supreme Court has adopted a two part "experience" and "logic" test.

7  *United States v. Guerrero*, 693 F.3d 990, 1000 (9th Cir. 2012), citing *Press-Enterprise Co. v.*

8  *Superior Court*, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("*Press Enterprise II*").  The

9  "experience" prong considers "whether the place and process have historically been open to the

10  public."  This requirement looks to the experience throughout the United States.  *Guerrero*, 693

11  F.3d. at 1000.  "The 'logic' element inquires 'whether public access plays a significant positive role

12  in the functioning of the particular process in question.'"  *Id.*, 693 F.3d at 1001, quoting *Press-*

13  *Enterprise Co.* at 9, 106 S.Ct. 2735.  The Ninth Circuit has also indicated that "logic alone, even

14  without experience, may be enough to establish the right."  *In re Copley Press, Inc.*, 518 F.3d 1022,

15  1026 (9th Cir. 2008), citing *Seattle Times Co. v. U.S. District Court*, 845 F.2d 1513, 1516, 1517

16  (9th Cir. 1988).  If a qualified First Amendment right of access arises, then the presumption of

17  public access "can be overcome 'only by an overriding interest based on findings that closure is

18  essential to preserve higher values and is narrowly tailored to serve that interest.'"  *Guerrero*, at

19  1000, quoting *Press-Enterprise Co.* at 9, 106 S.Ct. 2735.

20      *United States v. Loughner*, 769 F.Supp.2d 1188, 1191 (D.Ariz. 2011), notes that "access to

21  court proceedings has grown increasingly important and there has been a corresponding expansion

22  of rights on the part of the general public and the media under the First Amendment to attend

23  almost all criminal proceedings."  The court states:

24      These stages in the criminal process are now generally presumed to
       be open—meaning that there must be overriding reasons to exclude
25      the public and press from attending them:  bail and pretrial release
       proceedings, *Seattle Times Co. v. U.S. Dist. Court,* 845 F.2d 1513,
26      1517 (9th Cir. 1988); preliminary hearings, *Press–Enterprise Co. v.*
       *Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986)
27      ("*Press–Enterprise II* "); pretrial suppression hearings, *United States*
       *v. Brooklier,* 685 F.2d 1162, 1171 (9th Cir. 1982); change of venue
28      hearings, *In re Charlotte Observer,* 882 F.2d 850, 852 (4th Cir.

5

1989); change of plea hearings, *In re Washington Post Co.,* 807 F.2d 383, 389 (4th Cir. 1986); voir dire, *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 510–11, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) *("Press–Enterprise I");* criminal trials generally, *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 605–06, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); and sentencings, *United States v. Alcantara,* 396 F.3d 189, 197–98 (2nd Cir. 2005).

*Loughner,* at 1191.

This trend of increased openness in criminal proceedings also encompasses a qualified First Amendment right to inspect and copy public records and documents, including judicial documents and records. *Id.*, at 1191.

The Government argues that "[t]he experience prong of the First Amendment access test is easily applied to 404(b) motions:  Fed.R.Evid. 404(b) motions are very common in criminal practice and they are historically open to the public, not filed under seal." *Government's Response (#228), pgs. 4-5.* The Government argues that neither party has identified a case in which a district court sealed a 404(b) motion and related briefing.  Defendant Gregory, however, relies on cases in which courts have sealed documents relating to pretrial motions to suppress evidence.  He argues that the Government's motion to introduce Rule 404(b) evidence raises issues of potential prejudice comparable to those involved in motions to suppress inadmissible evidence.

Defendant first relies on *United States v. McVeigh*, 119 F.3d 806 (10th Cir. 1997) which involved the trials of Timothy McVeigh and Terry Nichols for the 1995 bombing of the Murrah Federal Building in Oklahoma City, Oklahoma.  The issue before the Tenth Circuit concerned the district court's decision to seal the following documents: (1) redacted portions of Defendant Nichols' motion to suppress unlawfully obtained evidence; (2) FBI notes of the initial interview of Nichols after he turned himself in at a local police station; and (3) redacted portions of Nichols' and McVeigh's motions for severance and the exhibits attached thereto.  The court assumed, without deciding, that judicial documents are subject to the First Amendment standard and analysis articulated in *Press Enterprise II*.  *McVeigh*, at 812.  The court then stated:

> Suppression motions have historically been open to inspection by the press and the public. The suppression hearing is a critical pre-trial proceeding, one which is "often as important as the trial itself." *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81

L.Ed.2d 31 (1984).  Because the suppression hearing is the point in the process where the conduct of law enforcement officers is at issue, the public interest in access to the hearing is particularly high.  *Id.*  Thus, the *Press-Enterprise II* test of "experience and logic" suggests that the qualified right of access applies to the suppression motion.

*McVeigh*, 119 F.3d at 813.

The court held, however, that the right of access does not extend to evidence actually ruled inadmissible in such a hearing.  *Id.,* citing *United States v. Gurney*, 558 F.2d 1202, 1210 (5th Cir. 1977).  The court stated:

> Access to inadmissible evidence is not necessary to understand the suppression hearing so long as the public is able to understand the circumstances that gave rise to the decision to suppress.  Moreover, suppressed evidence, by definition, will not be admissible at trial and thus press access to such evidence will not play a significant positive role in the functioning of the criminal process, as the evidence is simply irrelevant to the process.  On the contrary, disclosure of such evidence would play a negative role in the functioning of the criminal process, by exposing the public generally, as well as potential jurors, to incriminating evidence that the law has determined may not be used to support a conviction.

*McVeigh*, 119 F.3d at 813.

The court noted that the district court sealed only those portions of the motions and exhibits that contained materials ruled inadmissible at trial.  The suppression hearing itself was open and available to the public, as was the district court's order which provided a detailed outline of the reasons for its conclusion that the statements were inadmissible.  The court also upheld the district court's order sealing the agent's notes regarding Defendant Nichols' interview statements and in sealing portions of the defendants' severance motions in which their counsel were required to reveal their respective trial strategies to show that their defenses were mutually antagonistic.  *Id.* at 814.

The court in *McVeigh* also found that the sealing orders were narrowly tailored to the compelling fair trial interests at stake:

> This is not a case where the district court has sealed entire documents or held closed pretrial proceedings.  Rather, the suppression and severance hearings were held in open court, and redacted versions of documents at issue were made available to the public.  Many of the other avenues often available to limit the prejudicial publicity that would arise from disclosure of these materials--such as venue

7

1    change, a continuance, extensive voir dire, and admonishments to the
2    jury--had already been exhausted by the time the orders were entered
     or were ongoing processes utilized by the court to try to protect
3    defendants' right to a fair trial from the substantial publicity that was
     occurring.

4    *Id.*, 119 F.3d at 815.

5    Defendant also relies on *United States v. Rogers*, 2013 WL 5781610 (D.Minn. 2013).[3]  The

6    defendant filed a motion to suppress statements he made during an interview with the FBI.  He also

7    moved to seal a digital video recording and transcript of the interview filed in conjunction with the

8    motion to suppress.  In granting the motion to seal, the court stated:

9        There is good reason not to make evidence subject to suppression
         publicly available.  As explained by the Supreme Court in *Gannett*
10       *Co., Inc. v. DePasquale,*

11            The whole purpose of [suppression] hearings is to screen out
              unreliable or illegally obtained evidence and insure that this
12            evidence does not become known to the jury.... Publicity
              concerning the proceedings at a pretrial hearing ... could
13            influence public opinion against a defendant and inform
              potential jurors of inculpatory information wholly
14            inadmissible at the actual trial.

15            The danger of publicity concerning pretrial suppression
              hearings is particularly acute, because it may be difficult to
16            measure with any degree of certainty the effects of such
              publicity on the fairness of the trial.  After the commencement
17            of the trial itself, inadmissible prejudicial information about a
              defendant can be kept from a jury by a variety of means.
18            When such information is publicized during a pretrial
              proceeding, however, it may never be altogether kept from
19            potential jurors.  Closure of pretrial proceedings is often one
              of the most effective methods that a trial judge can employ to
20            attempt to insure that the fairness of a trial will not be
              jeopardized by the dissemination of such information
21            throughout the community before the trial itself has even
              begun.

22       443 U.S. 368, 378–79 (1979).
23
         Here, Rogers' statement to Agent Ball is the subject of a motion to
24       suppress currently pending before this Court, and the very purpose of
         Rogers' motion is to ensure that his statements are not shared with
25       the jury.  Moreover, there has been copious publicity surrounding this

26

27            [3] The defendant in *Rogers* was accused of being a member of a militia group that plotted to blow-up
     a National Guard armory.  *See TwinCities.com, St. Paul Pioneer Press,* article posted 7/23/2013,
28   "Montevideo militia group's alleged bomb plot detailed at hearing."

case, and if Government Exhibits 2 and 3 are publicized before their admissibility is determined, Rogers' right to a fair trial could be impaired.

*Rogers*, at *3.

The court stated, however, that defendant's motion to suppress and the FBI agent's testimony concerning his statement were part of the public record. The defendant's post-hearing memorandum in support of his motion to suppress and the court's report and recommendation on the motion would also be publicly available. Based on the availability of these matters, the court stated that "[t]he public will have no difficulty understanding the circumstances giving rise to the Court's decision to suppress or not suppress Rogers' statements." *Id.*

As the opinions in *McVeigh* and *Rogers* indicate, the public's ability to understand and evaluate a motion to suppress evidence allegedly obtained in violation of the Fourth or Fifth Amendment does not necessarily require specific knowledge of the substance of the evidence sought to be excluded. A motion to suppress a defendant's incriminating statement based on the alleged violation of his *Miranda* rights, for example, focuses on the circumstances surrounding the obtaining of the statement, such as whether the defendant was in police custody, whether he was subjected to interrogation, and whether he was informed of and waived his right to remain silent or confer with counsel. Knowledge of the contents of the defendant's statement is not required to understand the constitutional or evidentiary issues at stake, or the basis for the court's decision on the motion. *McVeigh* and *Rogers* both recognize the public's right to attend pretrial motion hearings and to review judicial documents filed in connection therewith. The courts in those cases were able to fashion orders that reasonably balanced the public's right of access to pretrial motions and decisions, while protecting the defendant's right to a fair trial by sealing the underlying evidence until its admissibility could be determined.

It is not as easy to segregate the substance of the "bad acts" evidence from the arguments regarding its admissibility pursuant to Rule 404(b). The substance of the evidence is bound up with the purpose for which it is offered, i.e., as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. The Government's Rule 404(b) motion necessarily discusses and analyzes the "bad acts" evidence in detail in arguing why it

should be admitted at trial.  The Defendant, in turn, will have to discuss and analyze the evidence in his opposition in arguing why it should be excluded.  The Court will likewise have to discuss and analyze the "bad acts" evidence in explaining its decision to either admit or exclude the evidence.

Because there is no effective means to segregate or redact the substance of the "bad acts" evidence from the arguments relating to its admissibility or inadmissibility, the sealing order that Defendant Gregory seeks is much broader than the sealing orders issued in *McVeigh* and *Rogers*. Defendant asks the court to seal the entirety of the Government's Rule 404(b) motion and the response and reply briefs thereto, as well as closing any pretrial hearing on the motion.  If the Court denies the Government's motion, then Defendant presumably also requests that any written decision discussing the "bad acts" evidence be sealed at least until the trial of this case.

The recent decision in *United States v. Martoma*, 2014 WL 1641981 (S.D.N.Y., decided January 9, 2014) involved a motion to seal and circumstances substantially similar to those at issue in this case.[4]  The defendant in *Martoma* was charged with conspiracy to commit securities fraud in violation of 18 U.S.C. §371 and two counts of securities fraud in violation of 18 U.S.C. §§78j(b) and 78ff.  Motions *in limine* filed by both parties concerned evidence relating to the defendant's expulsion from Harvard Law School in 1999, including that defendant (1) used computer software to generate a forged law school transcript that he submitted to federal judges in connection with his application for a clerkship, (2) that defendant obtained interviews with several federal judges on the basis of the forged law school transcripts, (3) that during law school disciplinary proceedings, defendant altered the date of an email he submitted as mitigating evidence, and (4) during the disciplinary proceedings, the defendant submitted a computer forensic report concerning the date on which the email had been sent, and without disclosing that he formed the company that prepared the forensic report.

. . .

---

[4] The *Martoma* case has been the subject of significant media attention and was recently tried in federal court in New York City.  *See e.g. NPR, "Jury to Get Insider Trading Case of Mathew Martoma,"* at www.npr.org., published February 3, 2014.

1

The government did not seek to introduce the law school evidence in its case in chief, but

2

argued that it may be admissible as impeachment evidence under Fed.R.Evid. 608(b) if the

3

defendant placed the lack of forensic evidence at issue in his defense.[5]  The defendant moved to

4

seal all papers concerning the motions *in limine* and to close any hearing on the motions on the

5

grounds that the law school evidence was a source of great embarrassment to him, and the

6

information would risk tainting prospective jurors and biasing them against him.  The government

7

opposed sealing all papers and closing hearings, but did not oppose a more limited sealing order.

8

In addressing the motion to seal, the district court first discussed the common law and First

9

Amendment right of public access to judicial proceedings. The court noted that the Second Circuit

10

has held that the common-law right of access extends to documents considered by the court in

11

orders disposing of substantive pretrial motions.  *Martoma*, at *2, citing *United States v. Wolfson,*

12

55 F.3d 58, 61 (2d Cir. 1995).  The court further stated that documents submitted to a court for its

13

consideration in deciding a motion are, as a matter of law, judicial documents to which a strong

14

presumption of immediate public access attaches under both the common law and the First

15

Amendment.  *Id.* at *3, citing *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d at 121, 126 (2d Cir.

16

2006).

17

The district court first addressed defendant's argument that the public disclosure of the law

18

school evidence would subject him to great embarrassment.  The court noted that the "'mere fact

19

judicial records may reveal potentially embarrassing information is not in itself a sufficient reason

20

to block public access.'" *Martoma*, at *5, citing *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st

21

Cir. 1998).[6]  The court stated that in considering an assertion of privacy, the court should first

22

23

24

25

[5] Rule 608(b) provides that "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of (1) the witness[.]"

26

27

28

[6] *United States v. Loughner* notes in this regard that privacy and reputational concerns typically do not provide sufficient reason to overcome a qualified First Amendment right of access.  769 F.Supp.2d at 1196, citing  *In re Application of New York Times Co.*, 585 F.Supp.2d 83, 93 n. 14 (D.D.C. 2008) and *In re McClatchy Newspapers, Inc.*, 288 F.3d 269, 374 (9th Cir. 2002).

1    consider the degree to which the subject matter is traditionally considered private such as personal

2    financial or business affairs, family affairs, illnesses, or embarrassing conduct with no public

3    ramifications, versus conduct affecting a substantial portion of the public.  The reliability of the

4    information should also be considered.  Raw, unverified information should not be as readily

5    disclosed as matters that are verified.  The court may also consider whether the nature of the

6    materials is such that there is a fair opportunity for the subject to respond to any accusation

7    contained therein.  Although the defendant's privacy interests may be considered, the privacy

8    interests of innocent third parties weigh more heavily in the court's balancing equation.  *Id.*, citing

9    *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) ("*Amodeo II*").

10         Applying the foregoing factors, the court found that the core elements of the law school

11   evidence were not in dispute.  The reliability of the evidence therefore weighed against defendant's

12   claim of privacy.  *Martoma*, at *6.  The conduct also did not involve solely private, personal

13   matters to which courts grant greater privacy protection.  The court stated that "because the right to

14   practice law is a state-granted privilege that puts an individual's character and fitness at issue, this

15   type of dishonesty in law school-and in connection with obtaining an important position in the

16   federal courts-cannot be said to have 'no public ramifications.'" *Id.*  The court concluded that the

17   embarrassment that defendant would suffer if the law school evidence was publicly disclosed did

18   not trump the presumptive right to public access that attaches to substantive pre-trial motions.  *Id.*

19         Turning to defendant's assertion that there was a substantial probability of prejudice to his

20   Sixth Amendment right to a fair trial, the court recognized that no right ranks higher than the

21   accused's right to a fair trial.  The court held, however, that defendant had not demonstrated "a

22   substantial probability of prejudice to his right to a fair trial if sealing and closure are not granted."

23   *Id* at *7.  In so holding, the court stated as an initial matter that

24              [p]retrial publicity does not ... lead in every criminal case to
               an unfair trial.  Recent more highly publicized cases indicate
25              that most potential jurors are untainted by press coverage
               despite widespread publicity....  Thus pervasive publicity,
26              without more, does not automatically result in an unfair trial.

27         *Seattle Times Co. v. U.S. Dist. Court for W. Dist. of Wash.*, 845 F.2d
         1513, 1517 (9th Cir. 1988); *see also In re Nat'l Broad. Co., Inc.*, 828
28

1    F.2d 340, 346 (6th Cir. 1987) (noting in the context of a motion to
     unseal records of pre-trial proceedings, that "'pretrial publicity, even
2    if pervasive and concentrated,  cannot be regarded as leading
     automatically in every kind of criminal case to an unfair trial.'")
3    (quoting *Columbia Broad. Sys., Inc. v. U.S. Dist. Court for Cent.*
     *Dist. of Cal.*, 729 F.2d 1174, 1180 (9th Cir. 1984).  "In other words,
4    the publicity must create a "'pattern of deep and bitter prejudice" ...
     throughout the community.'" *Id.* (quoting *Irvin v. Dowd*, 266 U.S.
5    717, 727 (1961)).

6    *Martoma*, at *7.

7    In considering the level of prejudice that the defendant would suffer in the absence of

8    sealing and closure, the court first noted that the law school evidence related to events that occurred

9    fourteen years ago and there was no direct connection between that evidence and the insider trading

10   charges that the defendant was facing.  The court also found that the law school evidence was not

11   so inflammatory that it was likely to prejudice the entire community against the defendant.  The

12   court therefore found that defendant had not demonstrated a substantial probability of prejudice to

13   his right to a fair trial absent sealing and closure.  *Id.* at *7.

14   The court also held that defendant had not met his burden to show that there were no

15   reasonable alternatives to sealing and closure to adequately protect his right to a fair trial.  The

16   court stated:

17       Numerous courts in high-profile cases have recognized that a
         thorough voir dire may be adequate to address concerns about the
18       effect of pre-trial publicity on a defendant's right to a fair trial. *See,*
         *e.g., Seattle Times Co.,* 845 F.2d at 1518 (noting that appropriate voir
19       dire is an alternative to sealing, and that the district court should have
         considered the size of the metropolitan area before "dismiss[ing] the
20       likelihood that an impartial jury could be impaneled through
         searching voir dire and the use of preemptory challenges"); *In re*
21       *Nat'l Broad. Co., Inc.,* 828 F.2d at 346 (discussing *voir dire* as an
         alternative to sealing and noting that "[i]t is significant that *voir dire*
22       in some of the most widely covered criminal prosecutions has
         revealed the fact that many prospective jurors do not follow such
23       news closely and that juries can be empanelled without inordinate
         difficulty"); *In re Nat'l Broad. Co., Inc.,* 635 F.2d 945, 953 (2d Cir.
24       1980) ("The opportunity for *voir dire* examination still remains a
         sufficient device to eliminate from jury service those so affected by
25       exposure to pre-trial publicity that they cannot fairly decide issues of
         guilt or innocence."); *United States v. Volpe,* 42 F.Supp.2d 204, 218
26       (E.D.N.Y.1999) ( "Careful *voir dire* questioning is a recognized and
         effective tool to uncover bias.  Indeed, thorough *voir dire*
27       examinations have been used in this circuit to produce unbiased
         juries, even in high-profile cases."): *United States v. Yousef,* S1293
28       CR. 180(KTD), 1997 WL 411596, at *3 (S.D.N.Y. July 18, 1997)

                                        13

1

2

(finding in the World Trade Center bombing case that "a thorough voir dire of potential jurors will be sufficient in detecting and eliminating any prospective jurors prejudiced by pretrial publicity").

3    *Martoma*, at *7.

4    The "bad acts" evidence at issue in this case includes two Nevada State Bar disciplinary

5    decisions against Defendant Gregory that are, themselves, matters of public record and public

6    concern.  The Government's Rule 404(b) motion, of course, calls attention to these disciplinary

7    decisions and makes it more likely that they will be the subject of news media reporting relating to

8    the subject prosecution.  The 2001 and 2008 State Bar disciplinary matters have some basis of

9    reliability--they are not mere accusations that have never been established in any fact-finding

10   proceeding.  The 2001 State Bar discipline matter is unrelated to the charges against Defendant

11   Gregory in this case.  The 2008 State Bar discipline matter is also unrelated insofar as it concerns

12   the finding that Defendant engaged in a fee splitting agreement with his paralegal.  The other part

13   of the 2008 State Bar discipline matter, however, apparently comments on or reprimands Defendant

14   Gregory for his failure to disclose his relationship with Defendant Benzer and Silver Lining

15   Construction Company to the HOA by whom he was retained as counsel.  It is, thus, relevant to the

16   charges against Defendant Gregory in this case.  The third alleged bad act involves Defendant's

17   alleged conduct in having the aforementioned paralegal notarize signatures of individuals whom he

18   did not personally witness sign the documents.  The Government will presumably present

19   testimony by the paralegal or others on this matter.  The Government also ties this "bad act" to the

20   conduct charged in the indictment, by alleging that a certain forged signature on a HOA document

21   was notarized by the same paralegal-notary.

22   The asserted "bad acts' evidence in this case is arguably more probative of the criminal

23   charges against Defendant Gregory, and therefore potentially more prejudicial, than was the bad

24   acts evidence at issue in *Martoma.*  Like the court in *Martoma*, however, the Court finds that this

25   evidence is not so inflammatory that it is likely to prejudice the entire community against

26   Defendant Gregory.  It is not materially more inflammatory than the charges against Defendant in

27   the indictment.  Whether all, some or none of this evidence is admitted at trial remains to be

28   determined once the Government's motion is filed, fully briefed and argued.  Trial in this case is at

least several months away.  Assuming that the Government's Rule 404(b) motion and the Court's decision on that motion receive news media attention, the potential prejudice resulting from that publicity is likely to dissipate by the time of trial.

As *Martoma* states, numerous courts in high-profile cases have recognized that a thorough voir dire is often adequate to address concerns about the effect of pre-trial publicity on a defendant's right to a fair trial.  In *United States v. Loughner*, which involved the prosecution for the shooting of U.S. Congresswoman Gabrielle Giffords, and the wounding and killing of several other persons, including United States District Judge John Roll, the district judge ordered that search warrant materials, with limited exceptions, to be unsealed.  In so ruling, the court noted that trial was not expected to begin for months and that with the assistance of counsel, the court would prepare a comprehensive jury questionnaire to identify the extent to which prospective jurors may have been exposed to news coverage about the case and to assist counsel in ferreting out people with fixed opinions.  The court also indicated that it would allow greater participation by counsel in jury voir dire and would consider granting additional preemptory challenges.  769 F.Supp.2d at 1196.  The additional measures granted in *Loughner* may not be necessary in this case which does not involve either the level of public attention or emotions and passions that were aroused by the tragedy in Tuscon.  *Loughner* and the other cases cited above, however, demonstrate that potential prejudice resulting from pretrial publicity can effectively be dealt with by means other than sealing and closing  judicial proceedings from public and media access.

## CONCLUSION

The Court is mindful that the sealing order requested in this case would shield from public view all of the proceedings relating to the Government's Rule 404(b) motion.  If that were the only way to adequately ensure that Defendant Gregory receives a fair trial, then the Court would have to consider granting the request.  Defendant, however, has not made any such showing, and the Court does not believe that such sealing is necessary to protect Defendant's Six Amendment rights.  Accordingly,

**IT IS HEREBY ORDERED** that Defendant Keith Gregory's Motion to Seal Government's Motion to Admit Evidence Pursuant to Fed.R.Evid. 404(b) (#226) is **denied**.

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS FURTHER ORDERED** that this Order, together with Defendant's Motion to Seal (#226), the Government Response (#228), and Defendant's Reply (#231), as well as the record and recording of the January 14, 2014 motion hearing, shall be unsealed fifteen (15) days after the entry of this order unless an objection to this Order is filed pursuant to Local Rule (LR) IB 3-1.  If an objection is filed, then this Order and the foregoing documents and the January 14, 2014 hearing record shall remain under seal, subject to further order by the District Judge.

DATED this 5th day of February, 2014.

_____
GEORGE FOLEY, JR.,
UNITED STATES MAGISTRATE JUDGE