# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES OF AMERICA,           )
                                    )
              Plaintiff,            )          Case No.: 2:13-cr-00018-JCM-GWF
                                    )
vs.                                 )          **ORDER**
                                    )
                                    )          **Defendant Gregory's Motion to**
LEON BENZER, KEITH GREGORY, *et al.*, )        **Sever - 3328**
                                    )
              Defendant.            )
_____)

   This matter is before the Court on Defendant Keith Gregory's Motion to Sever Trial With Co-Defendant Leon Benzer (#328), filed on August 5, 2014. The Government filed its Response to Defendant Gregory's Motion to Sever (#339) on August 22, 2014. Defendant Gregory filed his Reply in Support of his Motion to Sever (#344) on September 5, 2014. The Court conducted a hearing on Defendant's motion to sever on September 16, 2014.

   Also before the Court is Defendant's Motion to Allow Defendant Keith Gregory Through and Including September 26, 2014 to File a Motion to Allow the Filing of the Leon Benzer Proffers Under Seal (#356). The Government filed its Response (#359) to that motion on September 19, 2014. Defendant Gregory filed his Reply (#360) on September 25, 2014. Defendant Gregory thereafter filed his Motion to Seal Proffers Made by Leon Benzer (#368) on September 26, 2014. Defendant Gregory further filed a Motion for Leave to File a Supplemental Memorandum in Support of His Motion to Seal the Proffers Made by Leon Benzer (#413) on November 20, 2014. The Government filed its Response (#417) on November 25, 2014 and Defendant Gregory filed his Reply (#421) on November 25, 2014.

. . .

1

## BACKGROUND

The indictment in this case charges the Defendants with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349; wire fraud in violation of 18 U.S.C. § 1343; and mail fraud in violation of 18 U.S.C. § 1341.  *Indictment (#1)*.  The indictment alleges that Defendant Leon Benzer, the owner of Silver Lining Construction Company (SLC), together with an experienced construction defects attorney, now deceased, were the masterminds of a conspiracy whose object was to take control of the boards of directors of various condominium homeowners associations ("HOAs") through the election of directors controlled by the conspirators.[1]  These controlled directors would then vote to award legal, construction defect and other work for the associations to entities controlled by the conspirators, including SLC.  The Government has further summarized the alleged scheme in its response to Defendant Gregory's motion to sever.

### A.    Allegations Against Defendant Benzer.

The Government alleges that Defendant Benzer and Quon targeted several Las Vegas homeowners associations which had existing or potential construction defect cases.  Benzer and Quon allegedly funded the purchase of condominium units at the HOAs in the name of "straw purchasers" or "straw buyers" who used funds supplied by Benzer and his partner to either purchase the condominium units for cash or to obtain bank financing for the purchases.  The Government alleges that the straw buyers made material misrepresentations on their loan applications including that they intended to occupy the condominiums and that no part of the purchase prices or down payments were borrowed.  The Government alleges that virtually none of the straw buyers occupied the condominiums and that Defendant Benzer rented the condominiums to generate income to cover part of the cost of the fraudulent scheme.  The Government also alleges that Benzer agreed to pay the mortgage payments and homeowners association fees for the straw buyers and entered into "investment agreements" with the straw buyers that were hidden from the financial institutions who funded their purchases.  The Government also alleges that Benzer

---

[1] Although not named in the indictment, the alleged co-mastermind of the conspiracy has elsewhere been identified by the Government as Nancy Quon.

2

maintained control of the condominiums by directing that a percentage of the ownership interest in the condominium purchased by the straw buyer be transferred to a trusted insider so that a straw buyer could not dispose of the condominium without Defendant Benzer's approval.

The Government alleges that the straw buyers agreed for a price to run for election to the homeowners association boards, and that at various times during the conspiracy, Defendant Benzer directed the rigging of board elections to insure that his chosen candidate was elected. The rigging of elections allegedly included sending in forged ballots from nonresident condominium owners. Once elected, the planted board members would receive instructions from Benzer as to what actions to take. Defendant Benzer allegedly directed his captive board members to hire designated property managers, attorneys and contractors. The Government alleges that Defendant Benzer "assembled a large cast of characters to assist him in hijacking the HOA boards." *Response (#339), pg. 5.* This included real estate agents to locate and facilitate the purchase of condominiums and straw buyers with good credit to qualify for loans and who were willing to run for election to the HOA boards and follow Benzer's instructions. The alleged cast of conspirators also included attorneys hired by the planted board members "to give the boards a patina of legitimacy while following Benzer's instructions"; notaries to facilitate the many transfers between and among straw buyers; and "financial 'bean-counters' who made sure Defendant Benzer's co-conspirators were all paid for their efforts in advancing the scheme." *Response (#339), pgs. 5-6.*

In addition to Defendants Benzer and Gregory, the remaining Co-Defendants charged in the indictment are Charles McChesney, a private investigator who was allegedly a straw buyer and SLC controlled board member at the Chateau Nouveau HOAs. *Indictment (#1)*, ¶ 14; Barry Levinson, an attorney who allegedly did work for SLC and Benzer, acted as general counsel at the Park Avenue and Pebble Creek HOAs*,* and at the direction of SLC and Benzer purported to represent an HOA in an effort to secure board positions for SLC and Benzer controlled candidates, ¶ 15; Salvatore Ruvolo who allegedly was a straw buyer and SLC controlled board member at the Park Avenue and Chateau Nouveau HOAs, ¶ 20; David Ball, a real estate agent who allegedly was a straw buyer and SLC controlled board member at the Chateau Nouveau HOA, ¶ 21; and Edith Gillespie, Defendant Benzer's half-sister, who allegedly was a straw buyer at an HOA, and who

1   allegedly recruited other straw buyers and board candidates on behalf of Defendant Benzer, ¶ 22.

2   **B.**   **Allegations Against Defendant Keith Gregory.**

3   The indictment alleges that Defendant Keith Gregory "was an attorney licensed in Nevada

4   who did work for Benzer and SLC, and who through the actions of SLC controlled boards, was

5   hired and acted as general counsel at the Vistana and Sunset Cliffs HOAs and who, at the direction

6   of SLC and Benzer, purported to represent an SLC and Benzer controlled board candidate in an

7   action against an HOA board that SLC and Benzer were attempting to control." *Indictment (#1)*, ¶

8   14.   The Government has further described Defendant Gregory's alleged involvement in the

9   conspiracy in its response to his motion to sever.   To the extent possible, the Court summarizes the

10  Government's factual allegations against Defendant Gregory, without including the Government's

11  argumentative characterizations.

12  The Government alleges that prior to 2006, Defendant Gregory represented Defendant

13  Benzer in matters before the Nevada State Contractors Board.   Defendant Gregory's participation

14  in the conspiracy allegedly began in September 2006 when Defendant Benzer sent Mr. Gregory an

15  email stating that he had some associates who were trying to run for the HOA board at the Horizon

16  at Seven Hills HOA, but were encountering problems.   According to Benzer's email, the builder

17  was resisting turning the HOA over to the residents.   Benzer inquired whether Gregory would be

18  interested in filing a motion or legal action for the district court to oversee the HOA election

19  process. *Government's Response, Declaration of Charles LaBella, Exhibit 1.* The Government

20  alleges that Benzer had already purchased two condominiums at Horizon at Seven Hills in the

21  name of straw buyers and was laying the groundwork for an HOA board takeover.   There is no

22  indication in the email that this information was disclosed to Gregory.   The Government does not

23  assert that Mr. Gregory actually filed a lawsuit regarding the HOA election at Horizon at Seven

24  Hills or engaged in other activity at Benzer's request in regard to that condominium complex or its

25  homeowners association.

26  The Government also alleges that Defendant Benzer stated in the email to Mr. Gregory that

27  he had "some other properties that are looking for a good hoa atty.  John leach is getting the

28  majority of this type of work out there.  I have the ear of a few of them and have been known to

4

follow my suggestions.  There are times const defect becomes part of the picture.  I know you rep a lot of contractors and don't want to put you in a spot.  Let me know your thoughts. [sic]."  *Id., Exhibit 1.*  Defendant Gregory allegedly responded to this email by stating:  "I don't have a conflict.  If you want me to get involved, let me know."  Benzer responded that he would have "Ralph or maria forward you some information to get started."  *Id.*  The Government alleges that "Ralph" was Ralph Priola, another alleged conspirator.  *Government's Response (#339), pg. 7.*

### 1.   Defendant Gregory's alleged Involvement in the Conspiracy to Takeover the Jasmine HOA Board.

The Government alleges that Defendant Gregory's first substantive involvement in the conspiracy occurred when Defendant Benzer directed him to sue the Jasmine HOA on behalf of Benzer's straw buyer, Arnie Myers, to facilitate Myers' election to the HOA board of directors.  The Government further alleges that Benzer purchased three condominiums in Jasmine in the names of straw buyers.   When Jasmine announced three vacancies on its board, Benzer's straw buyers ran for the vacant positions.  The attorney for the Jasmine board, who was not controlled by Benzer, became suspicious of these candidates who had never been seen at board meetings.  The attorney determined that none of the candidates actually lived at Jasmine and that they were running as a slate using professionally created advertisements.  The attorney wrote a letter to the Jasmine board outlining his concerns and postponed the board election.

The Government alleges that when Benzer became aware of the letter, he held a meeting at Defendant Gregory's office to discuss his plan to sue the Jasmine board to force the election.  The next day, Benzer sent Gregory the names of his three candidates and asked when the lawsuit would be served.  The Government alleges that another member of the conspiracy, Maria Limon, had a falling out with Benzer and informed the Jasmine board's attorney of Benzer's scheme to take control of the board.  The attorney then informed the Jasmine board of his suspicions and what Ms. Limon had told him.  Once the scheme was exposed, two of Benzer's straw buyers dropped out as candidates and only Myers agreed to proceed with the plan.  After Myers lost the election, Benzer directed Gregory to sue Jasmine.  Gregory filed a complaint in May 2007 on behalf of Myers.  All of the fees and expenses for the case were paid by Benzer.  In August 2007, the Jasmine HOA

board moved to dismiss the case based on the discovery that certain notarized declarations of Jasmine homeowners submitted by Gregory in support of the complaint were forgeries.  The Government alleges that following a "flurry of telephone calls and meetings" between Benzer, Gregory and Priola, the lawsuit was dismissed.  *Government's Response (#339), pgs. 7-9.*

### 2. Defendant Gregory's Alleged Involvement in the Conspiracy Regarding Sunset Cliffs HOA.

The Government alleges that in June 2006, Benzer took control of the Sunset Cliffs HOA board through the election of three board members controlled by him.  The Benzer controlled board hired Defendant Gregory as its general counsel.  One year later, Defendant Gregory, ostensibly on behalf of the HOA, wrote a letter to the developer putting it on notice of certain construction defects before commencing a construction defects case.  The developer responded that the notice was legally defective.  The Government alleges that Defendant Gregory immediately sent a letter to Benzer and Priola and asked for further instructions.  The Government alleges that Gregory never revealed to the Sunset Cliffs homeowners "that he had a long-standing financial relationship with Defendant Benzer and that he was hired to facilitate Benzer's CD aspirations."  Nor did the Benzer controlled board members disclose the relationship between Benzer and Gregory to the HOA members.  The Government alleges that "[s]hortly after Defendant Gregory was rebuffed by the developer's attorney, investigators executed search warrants which effectively ended Benzer's plan to take over the Sunset Cliffs HOA."  *Government's Response (#339), pgs. 9-10.*

### 3. Defendant Gregory's Alleged Involvement in the Conspiracy regarding Vistana HOA.

The Government alleges that attorney Nancy Quon had secured control of the construction defect litigation at the Vistana condominium complex and the case was about to settle for $19 million.  The Government alleges that Defendant Benzer had his planted members on the Vistana HOA board hire Defendant Gregory as the HOA's general counsel.  The Government alleges that Mr. Gregory did not reveal his personal and financial relationship with Benzer to the Vistana homeowners; nor did Benzer's planted board members reveal to the homeowners the relationship between Benzer and Gregory or that Benzer had directed them to hire Gregory as general counsel. . . .

6

The Government alleges that even before Gregory became general counsel for Vistana, he agreed to represent Mary Ann Watts who was hired as Vistana's property manager by Benzer's planted board members. Ms. Watts was allegedly having problems with the two non-Benzer controlled board members. In order to monitor the situation, Benzer allegedly asked Gregory to accompany Watts to an HOA meeting to represent her if the two board members caused her problems. Defendant Gregory allegedly arranged for his paralegal to accompany Ms. Watts to the meeting. The Government alleges that Benzer later decided to replace Watts with another property manager, and directed Gregory, who was not yet Vistana's general counsel, to have the planted board members fire Ms. Watts. Ms. Watts allegedly went to Gregory's office and demanded $50,000 to walk away from Vistana without disclosing what Benzer and his co-conspirators, including Gregory, were doing. The Government alleges that Gregory contacted Defendant Benzer following his meeting with Ms. Watts. The Government also alleges that Gregory billed SLC and Benzer for his time in dealing with Ms. Watts.

The Government also alleges that prior to Gregory becoming general counsel at Vistana, Benzer requested that he represent Vistana HOA board member and president Steve Wark, who was allegedly a Benzer plant, in response to an investigation by the HOA Ombudsman's office regarding Wark's alleged conflicts of interest. Gregory allegedly assigned his paralegal to work on Mr. Wark's behalf. In his responses to the Ombudsman's investigation, Mr. Wark disclosed only that Benzer was a long time friend and colleague. Wark did not disclose the bribes he was receiving from Benzer or that Benzer was paying Gregory's legal fees for representing Wark in connection with the Ombudsman investigation.

The Government alleges that in January 2005, which was prior to Gregory's alleged involvement in the conspiracy, Benzer's planted board members awarded SLC an emergency contract to perform mold remediation work at Vistana while the construction defect lawsuit against the developer was pending. The Government alleges that Benzer, with Quon's assistance, had the board members vote to obtain a $1 million loan to fund the emergency contract. The emergency contract also included a right of first refusal for SLC to obtain the full remediation contract once the construction defect lawsuit settled. The Government alleges that Benzer had the Vistana HOA

board hire Gregory as general counsel just as the construction defect case settled and funds were available to fund the remediation contract.  At that time, Benzer allegedly controlled three of the five Vistana HOA board members.  The two board members he did not control resisted awarding the remediation contract to SLC.  The Government alleges that Benzer used Gregory to push the remediation contract through the board, including awarding SLC a $1 million mobilization fee before it began remediation work at Vistana.  Gregory allegedly drafted a letter to the Vistana board advising that SLC's right of first refusal was enforceable which he first sent to "Benzer and his point man at SLC for 'approval' before he sent it to the board." *Government's Response (#339), pg. 15.*  The Government alleges that while acting as Vistana's general counsel and being paid by the HOA board for his services, Defendant Gregory was also billing Benzer for the services that he was performing on his behalf in regard to Vistana.

The Government also alleges that Benzer paid $12,000 directly to Gregory after he helped orchestrate the Vistana remediation contract to SLC and secured the $1 million mobilization fee.  The Government characterizes this payment as a bribe which it alleges Gregory deposited in his personal account.  Shortly after this payment, Mr. Gregory allegedly received an email from a former Vistana resident who complained about the conduct of two of Benzer's planted directors and warned Gregory about his improper conduct.  The Government alleges that Gregory sent an email to the former resident denying her allegations and warning her to be careful about making baseless and defamatory allegations against him.  *Government's Response (#339), pgs. 10-15.*

Defendant Gregory's counsel submitted an affidavit in support of the motion to sever outlining Mr. Gregory's defense.  In regard to Benzer's pursuit of the remediation contract for the Vistana HOA, Defendant denies any wrongdoing.  The affidavit states that attorney David Amesbury represented Benzer and SLC in pursuing their rights under the 2005 contract.  Defendant Gregory advised Benzer, Amesbury and ultimately the Vistana board that the board was required to obtain three bids for the defect work and that Benzer's bid would have to match the low bid in order for him to obtain the contract.  The board obtained three bids.  Benzer threatened to sue to enforce the 2005 contract and Gregory informed the board that the 2005 contract was likely valid.  Defense counsel's affidavit states that Mr. Gregory was also concerned about possible delay in

obtaining repairs of mold and defective fire walls if a suit was filed.  The decision to award the contract was, however, left to the board which voted 3-2 to award it to SLC.  *Motion to Sever (#328), Exhibit A, Snow Affidavit,* ¶¶ 4-10.  Mr. Gregory denies any knowledge that Benzer purchased condominiums through straw buyers, paid them to run for election to the HOA boards, or conducted rigged elections through the services of other alleged conspirators.  ¶¶ 11-18.

Defendant Gregory argues that his trial should be severed from that of Defendant Benzer for the following reasons:  First, Mr. Gregory argues that severance is necessary because of the attorney-client relationship between he and Defendant Benzer.  Second, he argues that severance is necessary because the jury cannot reasonably be expected to compartmentalize the evidence as it relates to Benzer and Gregory in a joint trial.  Third, he argues that there is a substantial risk that the Government will introduce testimonial statements made by Defendant Benzer in his proffers to the Government which also implicate Mr. Gregory in violation of his Sixth Amendment rights as enunciated in *Bruton v. United States*, 391 U.S. 123, 137 (1968).  Fourth, Mr. Gregory argues that severance should be granted because he may call Defendant Benzer as a witness at a separate trial (following Benzer's trial) and that Benzer could provide substantially exculpatory testimony on Gregory's behalf.  The Government argues that none of the grounds asserted by Defendant Gregory are supported by sufficient facts to justify severance.

## DISCUSSION

Rule 8(b) of the Federal Rules of Criminal Procedure permits the joinder of defendants who have allegedly participated in the same act or transaction or the same series of acts or transactions constituting an offense or offenses.  Codefendants jointly charged are, *prima facie*, to be jointly tried.  *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991).  This rule "should be construed broadly in favor of initial joinder."  *United States v. Ford*, 632 F.2d 1354, 1373 (9th Cir.), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1399 (1981).  Joinder of charges against multiple defendants is particularly appropriate when the charges involve substantially overlapping evidence.  *United States v. Vasquez–Velasco*, 15 F.3d 833, 844 (9th Cir. 1994).  There is a strong preference for joint trials because separate trials would "impair both the efficiency and the fairness of the criminal justice system" by requiring the United States to "bring separate proceedings, presenting the same

evidence again and again[.]" *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 1708 (1987).  Joint trials also serve the interests of justice "by avoiding the scandal and inequity of inconsistent verdicts." *Id.* 481 U.S. at 211, 107 S.Ct. at 1709.  *See also Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 937 (1993).  The Ninth Circuit has repeatedly stated that a joint trial is particularly appropriate in a conspiracy case where the evidence of the individual conspirators' conduct and statements in furtherance of the conspiracy are admissible against all of the defendants charged in the conspiracy. *United States v. Hernandez*, 952 F.2d 1110, 1114-15 (9th Cir. 1991); *United States v. Freeman*, 6 F.3d 586, 598 (9th Cir. 1993); and *United States v. Cruz*, 127 F.3d 791, 799 (9th Cir. 1997), *abrogated on other grounds by United States v. Jimenez Recio*, 537 U.S. 270, 123 S.Ct. 819 (2003).

Rule 14(a) of the Federal Rule of Criminal Procedure states that if joinder of offenses or defendants for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials or provide any other relief that justice requires. To obtain severance, a defendant must satisfy the "heavy burden" of showing that prejudice would result from joinder. *United States v. Sitton*, 968 F.2d 947, 961 (9th Cir. 1992).  *United States v. Vaccaro*, 816 F.2d 443, 448 (9th Cir. 1987) notes that because some prejudice is inherent in any joinder of defendants, "if only 'some' prejudice is all that need be shown, few, if any, multiple defendant trials could be held."  The Supreme Court in *Zafiro* stated that "[d]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." 506 U.S. at 540, 113 S.Ct. at 938.  Severance should only be granted where there is a serious risk that a joint trial would either compromise a specific constitutional right of one of the defendants or prevent the jury from compartmentalizing the evidence as it relates to individual defendants.  Even where the risk of prejudice seems high, such risk can often be cured by "less drastic measures, such as limiting instructions." *Zafiro*, 506 U.S. at 539.

The Ninth Circuit has developed a four-part test to aid the district court's determination of whether severance should be granted.  These factors include: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3)

whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendants can show with some particularity, a risk that joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008), citing *United States v. Sullivan*, 522 F.3d 967, 981-82 (9th Cir. 2008). The most important factors are whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury. *Sullivan*, 522 F.3d at 981-82.

> **A.** **Whether the Jury Will be Reasonably Able to Compartmentalize the Evidence As It Relates to Defendants Benzer and Gregory In a Joint Trial.**

Defendant Gregory argues that the disproportionately greater evidence against Defendant Benzer, combined with the prejudicial spillover effect of that evidence, justifies the severance of his trial from that of Mr. Benzer. There is, of course, an obvious disparity in the evidence regarding Mr. Benzer's and Mr. Gregory's involvement in the alleged conspiracy. The Government alleges that Defendant Benzer was one of the masterminds of the conspiracy whose objective was to fraudulently gain control of several condominium homeowner associations in order to obtain the legal work and construction repair work arising from construction defect claims brought on behalf of the associations. The Government alleges that Defendant Benzer orchestrated and directed the actions of numerous individuals who performed acts in furtherance of the conspiracy. By contrast, Mr. Gregory's alleged role in the conspiracy was limited to his services as an attorney acting on behalf of Benzer and SLC in regard to the Jasmine, Sunset Cliffs and Vistana homeowners associations. At trial, the Government will presumably present evidence regarding the full scope of the alleged conspiracy, including the recruitment and payment of straw buyers who ran for election to the various HOA boards, the rigging of HOA board elections, and the conspirators' efforts to obtain legal or construction work through the control and manipulation of the HOA boards. Although much of that evidence does not directly relate to Defendant Gregory's alleged conduct, it may nevertheless be admissible against him and the other codefendants charged in the conspiracy.

As stated in *United States v. Grasso*, 724 F.3d 1077, 1089 (9th Cir. 2013), "[u]nder *Pinkerton v. United States*, a defendant charged in a conspiracy may be subject to liability for offenses committed as part of that conspiracy, even if the defendant did not directly participate in each offense.  328 U.S. 640, 647, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *see also United States v. Hernandez-Orellana*, 539 F.3d 994, 1007 (9th Cir. 2008).  *Pinkerton* 'renders all co-conspirators criminally liable for reasonably foreseeable overt acts committed by others in furtherance of the conspiracy they have joined, whether they were aware of them or not.' *Hernandez-Orellana*, 539 F.3d at 1007." *Grasso* notes, however, that "there may be due process limitations to imposing *Pinkerton* liability on defendants 'with extremely minor roles in the conspiracy,' *United States v. Bingham*, 653 F.3d 983, 997 (9th Cir. 2011), or where 'the relationship between the defendant and the substantive offense is slight.' *United States v. Castaneda*, 9 F.3d 761, 766 (9th Cir. 2000)." *Id.*

In *United States v. Nersesian*, 824 F.2d 1294 (2d Cir. 1987), the court affirmed the district court's denial of defendants' motions for severance in a conspiracy case.  The court stated that it "was not unaware of the dangers of prejudice inherent in large conspiracy trials" and that "where many defendants are tried at once under a single conspiracy theory, we continue to stress the importance of the district court's giving special cautionary instructions . . . to ensure that each individual defendant receives a fair trial based on the charges and evidence fairly attributable to him." 824 F.2d at 1303.  The defendants, who played comparatively lesser roles in the conspiracy, argued that the evidence offered against them at trial was minimal in comparison to that offered against other defendants and that they were unfairly prejudiced by the spillover effect of that evidence.  In rejecting this argument, the court stated that the government is "entitled to show the entire range of evidence of the conspiracy against each [defendant]." *Id.* at 1304.  The court further stated:

> We are unaware of any evidence offered to prove conspiracy that was admitted at the joint trial which would have been inadmissible at an individual trial.  *See United States v. Cunningham*, 723 F.2d 217, 230 (2d Cir. 1983), *cert denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984).  That one [defendant's] role in the conspiracy may have been smaller or less central that that of certain other conspirators does not mandate a separate trial.  *United States v. Vega*, 458 F.2d 1234, 1236 (2d Cir. 1972), *cert. denied*, 410 U.S. 982, 93 S.Ct. 1506, 36 L.Ed.2d 177 (1973).  As we have previously said,

> 'differences in degree of guilt and possibly degree of notoriety' of
> defendants do not require that there be separate trials. *United States
> v. Aloi*, 511 F.2d 585, 598 (2d Cir.), *cert. denied*, 423 U.S. 1015, 96
> S.Ct. 447, 46 L.Ed 386 (1975).

*Nersesian*, 825 F.2d at 1304.

In *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004), the Ninth Circuit noted that "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in a separate trial." *Id.* at 1242. The charges against the defendants in *Fernandez* involved multiple counts against "eleven co-defendants, alleging different conspiracies, with different goals as well as several predicate RICO and stand alone VICAR offenses involving different sub-groups of the co-defendants." *Id.* The court noted that the jury's ability to evaluate the evidence against the defendants was put to the test. The court nevertheless found that the jury was able to compartmentalize the evidence as demonstrated by the acquittal or failure to convict all defendants on all counts. *Id.*, at 1243. *See also United States v. Nickolas*, 2014 WL 3809044, *4 (D.Ariz. 2014) (court relied on *United States v. Nersesian* in denying a defendant's motion for severance of his trial from that of alleged co-conspirators who allegedly had a greater degree of culpability).

This case has a degree of complexity due to the number of condominium associations involved and number of individuals who allegedly participated in different aspects of the alleged conspiracy. The nature of the alleged transactions, however, are not so complex that the jury is likely to have difficulty understanding the alleged conspiracy or the roles played by the different actors in it. At its heart, the Government alleges that Defendant Benzer recruited and paid straw buyers to purchase condominiums in the targeted homeowners associations. Those straw buyers then ran for election to the HOA boards, some of which elections were rigged; and that once elected, the controlled board members voted in favor of hiring Ms. Quon's law firm to represent the HOA in construction defect litigation or to award construction defect remediation contracts to Defendant Benzer's company. Mr. Gregory's level of alleged participation and culpability is significantly less than that alleged against Mr. Benzer. The jury, however, should reasonably be

1    able to compartmentalize and distinguish the evidence relating to Defendant Benzer from that

2    relating to Mr. Gregory.

3           Mr. Gregory's alleged conduct may arguably be less egregious than that of other alleged co-

4    conspirators such as HOA board members who were allegedly straw buyers and paid agents of Mr.

5    Benzer or Ms. Quon.  Mr. Gregory's alleged violation of his fiduciary duties as general counsel to

6    the Sunset Cliffs and Vistana HOAs, however, is not so minor in comparison to the alleged conduct

7    of the other co-defendants as to warrant severance of his trial.  Defendant Gregory's counsel will

8    have the opportunity at trial to point out the lack of evidence that Mr. Gregory participated in the

9    conduct that forms the primary basis for the alleged conspiracy, and to argue that his alleged

10   conduct does not establish his participation in the conspiracy.  The Court therefore concludes that

11   severance is not warranted based on the jury's alleged inability to compartmentalize the evidence or

12   because of the spillover effect that the evidence against Mr. Benzer or other defendants will have

13   on the jury's assessment of Mr. Gregory's alleged culpability.

14           **B.**     <u>**Whether Severance is Required Because of the Attorney-Client Relationship**</u>
                 <u>**Between Gregory and Benzer.**</u>

15           Defendant Gregory argues that severance is required by virtue of the attorney-client

16   relationship between he and Defendant Benzer.  The fact that a client and his attorney are charged

17   with conspiring to commit a crime does not, in and of itself, require that their trials be severed.

18   Defendant Gregory's arguments for seeking severance on this ground is vague.  He cites *United*

19   *States v. W.R. Grace*, 439 F.Supp.2d 1125 (D.Mont. 2006) and *United States v. Alexander*, 736

20   F.Supp. 968 (D.Minn. 1990) in which the courts granted severance where the defendant attorney

21   intended to introduce confidential communications with the co-defendant client in support of his

22   defense, but to which the co-defendant client asserted the attorney-client privilege.  *See Motion to*

23   *Sever (#328), pg. 6.*  Defendant Gregory does not state, however, that he intends to introduce

24   confidential attorney-client communications between himself and Defendant Benzer in support of

25   his defense.  Instead, Defendant Gregory's counsel states that he "anticipates that Benzer will assert

26   as a defense, at least in part, that he relied on advice of counsel, specifically on Gregory's advice"

27   and that "[t]here is a great likelihood of unfair prejudice should the parties be jointly tried, because

28

1    irreconcilable conflicts relating to their communications could arise between them." *Id., pgs. 6-7.*[2]

2    In *United States v. W.R. Grace*, a defendant corporation and its current and former

3    employees were charged with a conspiracy to violate the Clean Air Act.  Some of the individual

4    defendants, including the corporation's former general counsel, intended to introduce at trial

5    confidential legal advice provided to the defendant corporation, which the individual defendants

6    alleged they relied on and would show their lack of criminal intent.  The corporation asserted the

7    attorney-client privilege as to the evidence and represented that it would assert the privilege in

8    either joint or separate trials of the individual defendants.  In analyzing whether the individual

9    defendants' intention to introduce such evidence required severance of their trials from that of the

10   corporation, the court stated:

11           The differing positions taken by Grace, the individual Defendants
             and government require the Court to resolve a series of questions
12           concerning this issue.  The first question is whether and under what
             circumstances the attorney-client privilege must give way to a
13           criminal defendant's Sixth Amendment right to present a defense
             where the privilege, if recognized, would exclude exculpatory
14           evidence.  If that question is answered in the affirmative, the Court
             must then assess *in camera* the documents submitted by the
15           individual Defendants to determine whether they would be of such
             exculpatory value that their exclusion amounts to a denial of the
16           individual Defendants' right to present a defense.  If the documents
             are of sufficient probative value as to implicate the individual
17           Defendants' Sixth Amendment rights and therefore must be admitted
             at trial over Grace's privilege claim, then it is necessary to decide
18           whether the prejudice to Grace is so great that severed trials are
             necessary under Rule 14(a).  The resolution of the problem on
19           reaching this point depends on whether the admission of the
             privileged evidence is prejudicial to Defendant Grace's trial rights, or
20           if it is merely prejudicial to Grace's interest in the confidentiality of
             its attorney-client communications.  If the latter is true, the
21           Defendants can be tried jointly.  If the former is true, and Grace
             would be prejudiced at a joint trial, severance is necessary to avoid
22           the prejudice.

23   *United States v. W.R. Grace*, 439 F.Supp.2d at 1136-37.

24   The court went on to hold that a defendant's assertion of the attorney-client privilege may

25   have to yield to a co-defendant's right to present exculpatory evidence in support of his defense.

26   _____

27       [2] Defendant Benzer filed a Motion for Relief from Prejudicial Joinder of Defendants for Trial
         (#389) on November 3, 2014.  Defendant Benzer's motion does not indicate that he intends to introduce
28   legal advice provided to him by Defendant Gregory in support of his defense.

*Id.* 439 F.Supp.2d at 1140-42.  The court further stated that the "nature and content of the privileged evidence must be weighed against the purposes served by the attorney-client privilege to determine whether any of the documents are of such value as to require Grace's rights under the attorney-client privilege to yield to the individual Defendants' Sixth Amendment rights to present evidence." *Id.* at 1142.

Based on its *ex parte* review of the proposed evidence, the court found that the individual defendants would likely be entitled to introduce certain evidence over the defendant corporation's assertion of the attorney-client privilege.  The court, however, rejected the argument that the introduction of the evidence would automatically require the severance of the corporate defendant's trial from that of the individual defendants.  The court found that as to some defendants the information they would offer at trial would not be prejudicial to the corporate defendant's trial rights and did not require severance.  As to two other defendants, however, the court found that the introduction of the otherwise privileged evidence did require severance.  The court stated:

> Defendant Stringer has submitted documents of significant exculpatory value the admission of which is incompatible with Grace's right to a fair trial, necessitating Defendant Stringer's severance.  As Grace's in-house counsel, nearly all of Favorito's conduct relevant to these charges is protected by Grace's attorney-client privilege.  Moreover, the materials Favorito intends to offer to attempt to show his innocence must necessarily put him at odds with those he advised, including the company and its managers, some of whom are his co-defendants.  A joint trial involving Favorito presents a heightened likelihood of antagonistic defenses and a near certainty that a defendant will seek to introduce evidence that incriminates one or more of his co-defendants. Irreconcilable conflicts between the Defendants' trial rights could emerge weeks into the proceeding, necessitating retrial of some Defendants at a huge cost in terms of time and resources.  The joint trial does not serve its intended purpose of promoting judicial economy where there is so great a likelihood of unfair prejudice to at least one Defendant.

*W.R. Grace*, 439 F.Supp.2d at 1148.

*See also United States v. Renzi*, 2010 WL 582100, *10-11 (D.Ariz. 2010) (following the analytical approach set forth in *W.R. Grace*).

In *United States v. Alexander*, 736 F.Supp. 968 (D.Minn. 1991), the court severed the trial of the defendant attorney from that of the co-defendant client based on the attorney's intention to

introduce confidential communications between himself and the client in support of his defense that he did not intend to commit the charged offenses.  The court noted that "[i]f it is the case that the crime-fraud exception swallows the entirety of the communications in issue here, it would seem that a joint conspiracy trial is in order, as the government urges." *Id.* at 998.  The court found, however, that the attorney-client statements that the defendant attorney intended to introduce occurred after the completion of the alleged crimes and therefore did not fall under the crime-fraud exception.  On that basis, the court held that it would be inappropriate to require a joint trial of the defendants.

The Government argues in this case that communications between Defendant Gregory and Defendant Benzer, or their respective agents, during the course of the alleged conspiracy fall within the crime-fraud exception to the attorney-client privilege and are therefore admissible against both Defendants.  The crime-fraud exception provides that when a lawyer's advice is sought to further a crime or fraud, the communication is not privileged.  *United States v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002).  The government bears the burden of proving that the attorney-client privilege does not apply because of the crime-fraud exception.  *Id.* citing *United States v. Laurins*, 857 F.2d 529, 540 (9th Cir. 1988).  "Demonstrating that the communications with the lawyer were 'in furtherance of an intended or present illegality and that there is some relationship between the communications and the illegality' makes a prima face case." *Id.* quoting *United States v. Bauer*, 132 F.3d 504, 509 (9th Cir. 1997).  The exception applies only when there is reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme.  *Id.* citing *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996).

The Government previously served grand jury subpoenas on Mr. Gregory and his law firm seeking documents relating to the alleged conspiracy.  Mr. Benzer generally asserted the attorney-client privilege with respect to the documents sought in the subpoena, and Mr. Gregory and his law firm filed a motion to quash the subpoenas.  In opposition to the motion to quash, the Government argued that the subpoenaed documents were either not within the scope of the attorney-client privilege or fell within the crime-fraud exception to the privilege.  After conducting an *in camera* review of the records, Magistrate Judge Leen held that the vast majority of documents submitted

for *in camera* review were not within the scope of the attorney-client privilege because they did not involve confidential communications between Mr. Benzer or SLC and his counsel for purposes of receiving or rendering legal advice. *See In re Subpoenas Duces Tecum ##117 & 118/ACTS No. 201100311,* Case No. 2:12-cv-01974-APG-PAL*, Order (#26), pg. 14.* The court found that:

> A small portion of the documents appear to relate to communications between movants and Benzer and SLC potentially in furtherance of the conspiracy described in the indictments in this case. The Court finds that the government has made a sufficient prima facie showing that the crime-fraud (sic) applies. The court's review of these documents reflects that there is reasonable cause to believe that the attorney's services were used in furtherance of the ongoing scheme described in the indictments. The government has also established that there is some relationship between the communications and the unlawful scheme described in the indictment.

*Id., pg 15.*

Whether particular documents or communications to be offered at trial by the Government are admissible against Defendant Gregory or Mr. Benzer over an attorney-client privilege objection is not before the Court on this motion. With respect to the instant motion to sever, Defendant Gregory has not made any showing that he, in fact, intends to introduce privileged attorney-client communications between himself and Mr. Benzer in support of his defense. If he does intend to introduce such evidence, then he needed to make specific reference to such evidence in his motion, and have also made an *ex parte* submission of that evidence to the Court in accordance with *W.R. Grace, supra.* Only then would the Court be able to determine (1) whether the communication is a privileged attorney-client communication that is not within the crime-fraud exception; (2) whether the statement has sufficient exculpatory value for Defendant Gregory that he is entitled to introduce it in support of his defense, notwithstanding Defendant Benzer's assertion of the attorney-client privilege; and (3) whether the communication is inculpatory as to Defendant Benzer, such that its introduction in a joint trial would prejudice his right to a fair trial. Nor has there been any showing beyond mere speculation that Defendant Benzer intends to introduce at trial otherwise privileged communications between himself and Defendant Gregory in support of his defense. Were Defendant Benzer to offer such evidence, the Court would be required to make a similar determination as to whether the statement's introduction is prejudicial to Defendant Gregory, such

as to require separate trials.

Defendant Gregory has not presented sufficient evidence to support severance of the trials based on the attorney-client relationship between he and Defendant Benzer.

### C.   Whether Severance Is Required So That Defendant Gregory May Call Defendant Benzer As a Witness In Support of His Defense.

Defendant Gregory argues that his trial should be severed from that of Defendant Benzer because in a separate trial, to occur after Benzer's trial is completed, Defendant Gregory would be able to call Benzer as a witness in support of his defense.  Defendant Gregory also argues that even if Defendant Benzer refused to testify at a separate trial based on his Fifth Amendment right against self-incrimination, Defendant Gregory could use the inferences arising from Mr. Benzer's refusal to testify in support of his defense.  In his affidavit in support of Defendant's motion to sever, Mr. Gregory's counsel alleges that Benzer could provide testimony in support of Gregory's defense that he did not participate in any of the wrongdoing alleged in the indictment and was not aware of the wrongful conduct allegedly engaged in by Benzer and other alleged co-conspirators.  Defendant's counsel states that he "has not confirmed Benzer will not take the stand at trial or whether he would be willing to testify for Gregory at a separate trial." *Motion to Sever (#328), Exhibit A, Snow Affidavit*, ¶ 22.  Mr. Gregory's counsel further states that he "will subpoena Benzer at a separate trial for Gregory, even if he asserts the Fifth Amendment, in order to argue the adverse influence (sic) against Benzer in favor of Gregory." *Id.*

*United States v. Vigil*, 561 F.2d 1316, 1317 (9th Cir. 1977) states that "[w]hen the reason for severance is the asserted need for a codefendant's testimony, the defendant must show that he would call the codefendant at a severed trial, that the defendant would in fact testify, and that the testimony would be favorable to the moving defendant." *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991) states that "[i]n considering a defendant's claim that a codefendant will provide exculpatory testimony, a district court must weigh a number of factors, among them, 'the good faith of the defendant's intent to have a codefendant testify, the possible weight and credibility of the predicted testimony, the probability that such testimony will materialize, [and] the economy of a joint trial.'"  The court "must also consider the exculpatory nature and effect of the desired

testimony– in other words, the *degree* to which the asserted codefendant's testimony is exculpatory." *Id.* The moving defendant must show more than that the offered testimony would benefit him, he must show that it is "substantially exculpatory." *Id.* at 886.

Defendant Gregory has failed to meet the requirements set forth in *Vigil*. He has not shown that Mr. Benzer would, in fact, testify in a separate proceeding on his behalf. Nor has he shown that Benzer's testimony would be substantially exculpatory for Gregory if he did testify. Defendant provides no legal authority in support of his assertion that severance should be granted because even if Benzer refused to testify, Gregory could make use of the adverse inference that would result from such a refusal. This assertion is contrary to the foregoing decisions. First, it is speculative that the reasonable inference to be drawn from Benzer's refusal to testify would be favorable to Defendant Gregory. Second, even if one were to infer that Benzer's refusal to testify was favorable to Gregory, such an inference does not meet the requirement that the co-defendant's testimony be "substantially exculpatory." Defendant Gregory's motion for severance on this ground therefore also fails.

### D.   Whether Severance is Required Pursuant to *Bruton v. United States*.

Defendant Gregory argues that severance should be granted pursuant to *Bruton v. United States*, 391 U.S. 123, 137, 88 S.Ct. 1620 (1968). Defendant Gregory asserts that, at trial, the Government may introduce statements made by Defendant Benzer during proffer sessions with the Government that also implicate Defendant Gregory. Defendant Gregory asserts that Defendant Benzer's proffer "is both exculpatory and inculpatory. It is exculpatory as it fails to identify Gregory as a participant in the critical parts of the alleged conspiracy, as noted above. It is inculpatory because the statements included tend to prove that a conspiracy existed and the government will use Benzer's statements to establish elements of the conspiracy with which Gregory has been charged." *Motion to Sever (#328), pgs. 9-10.* Defendant Gregory goes on to discuss, in particular, statements allegedly made by Defendant Benzer regarding a $10,000 check that was paid to Mr. Gregory after Silver Lining Construction Company was awarded a contract for defect work at Vistana. According to Defendant Gregory's motion: "Benzer apparently told investigators that the check was a 'thank you' for helping him obtain the construction defect

remediation contract at Vistana." *Id., pg. 10.*  Defendant Gregory argues that this statement can and should be interpreted to mean helping to obtain a contract for which Silver Lining had a right of refusal, on the agenda for a board meeting and vote at Vistana.  Defendant states, "[h]owever, during the interview one of the agents twisted Benzer's statement, suggesting that the payment was a bribe, to which Benzer reportedly replied, 'Well, that is your word, but yeah,' or words to that effect." *Id.*  Defendant Gregory's concern is that the Government will introduce statements made by Defendant Benzer during his proffer sessions,  even if Benzer does not testify at trial, and Defendant Gregory will be denied his right to cross-examine Benzer about those statements.

The Government argues in its response that Mr. Benzer's and Mr. Gregory's "statements to the Government are protected under a general proffer agreement that only allows the Government to use their statements against them at trial under specified circumstances." *Response (#339), pgs. 19-20.*  The Government further represents that the Defendants' statements can hardly be characterized as "confessions."  The Government asserts, however, that if "Defendant Gregory's and Defendant Benzer's statements become admissible, *Bruton* issues are common in cases where there are multiple defendants and the issue will be addressed – as it usually is – in the context of and during a joint trial."  The Government further asserts that "*Bruton* is a trial issue to be resolved as the evidence, and the defense, if any, unfold in the courtroom.  Indeed, the statements will either be deemed inadmissible or will be appropriately 'Brutonized' based on the circumstances." *Id., pg. 20.*

Defendant Gregory in reply argues that the Government's suggestion that statements made by Benzer can be "Brutonized" to avoid Confrontation Clause violations is inadequate.  Defendant argues that *Bruton*, as reinterpreted in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), applies to any testimonial statement made by a non-testifying co-defendant that implicates the defendant and therefore requires severance.

The Supreme Court held in *Crawford v. Washington* that a defendant's Sixth Amendment right to confront and cross examine the witnesses against him precludes the admission of testimonial statements of a witness who does not appear at trial, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness.  While not spelling

1  out a comprehensive definition of "testimonial," the Court stated that "it applies at minimum to

2  prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police

3  interrogations."   541 U.S. at 68, 124 S.Ct. at 1374.   The Ninth Circuit, quoting *Melendez–Diaz v.*

4  *Massachusetts,* 557 U.S. 305, 310, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), further states that "[a]

5  statement is testimonial when it is 'made under circumstances which would lead an objective

6  witness reasonably to believe that the statement would be available for use at a later trial.'" *United*

7  *States v. Rojas-Pedroza,* 716 F.3d 1253, 1267 (9th Cir. 2013).   It is beyond dispute that statements

8  made by Defendants during proffer sessions with the Government are testimonial.[3]

9          In *Bruton*, the Supreme Court held that the admission at trial of a non-testifying

10  codefendant's confession which explicitly implicated the defendant violated the defendant's Sixth

11  Amendment right to confront and cross-examine the witnesses against him.   In so holding, the

12  Court stated: "Despite the concededly clear instructions to the jury to disregard Evans' inadmissible

13  hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting

14  instructions as an adequate substitute for petitioner's constitutional right of cross-examination."

15  391 U.S. at 137, 88 S.Ct. at 1628.   In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702 (1987),

16  the Court stated that *Bruton* created only a "narrow exception" to the general rule that a witness

17  whose testimony is introduced at a joint trial is not considered to be a witness against the defendant

18  if the jury is instructed to consider that evidence only against another defendant.   The general rule is

19  predicated on the presumption that jurors will follow the instructions given to them.   481 U.S. at

20  206-07, 107 S.Ct. at 1707.   Unlike the confession in *Bruton*, the redacted confession of the

21  codefendant in *Richardson* did not directly implicate the defendant in the crime and did not even

22  mention her existence.   The Court held that the Confrontation Clause is not violated by the

23  admission of a nontestifying codefendant's confession with a proper limiting instruction where the

24  confession is redacted to eliminate not only the defendant's name, but any reference to his or her

25

26          [3] *Crawford*, itself, did not involve the introduction of a statement made by a non-testifying co-
defendant which also incriminates the defendant.   By limiting the Sixth Amendment to testimonial

27  statements, however, *Crawford* removed from constitutional analysis under *Bruton*, the admission of non-
testimonial statements made by a co-defendant, such as unwitting statements to an undercover agent.   *See*

28  *e.g. United States v. Dale*, 614 F.3d 942 (8th Cir. 2010).

existence.  481 U.S. at 211, 107 S.Ct. at 1709.  In *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151 (1998), however, the Court held that simply redacting the defendant's name from the codefendant's confession is not sufficient where there remains a direct and obvious inference that the other person implicated by the confession is the defendant.

The Ninth Circuit has held that the admission of a codefendant's statement, which does not incriminate the defendant unless it is linked with other evidence introduced at trial, does not violate the defendant's Sixth Amendment rights.  *United States v. Hoac*, 990 F.3d 1099, 1105 (9th Cir. 1993).  In *United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995), the defendants were jointly tried on charges of bank fraud.  At trial, the court admitted prior statements made by codefendants who did not testify and gave a limiting instruction that the statements could only be considered as evidence against the defendants who made the statements.  In holding that the admission of these statements did not violate the defendant's Sixth Amendment rights, the court stated:

> None of the codefendants' statements incriminated Olano on their face.  Unlike the full blown confession that was the subject of *Bruton*, the grand jury and deposition testimony of Hilling, Marler, and Gray that was read to the jury plainly did not have a sufficiently "devastating" or "powerful" inculpatory impact to be incriminating on its face. (citations omitted).

*Olano*, 62 F.3d at 1195.

*United States v. Angwin*, 271 F.3d 786, 796 (9th Cir. 2001), overruled on other grounds by *United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007), further states that "[u]nder *Bruton* and its progeny, the admission of a statement made by a non-testifying codefendant violates the Confrontation Clause when that statement facially, expressly, clearly and powerfully implicates that defendant."  *See also United States v. Hernandez-Orellana*, 539 F.3d at 1001 ("'the admission of a statement made by a non-testifying codefendant violates the Confrontation Clause when that statement facially, expressly or powerfully implicates the defendant.'"); and *United States v. LaFarga*, 2013 WL 6858969, *2 (D.Nev. 2013) ("For a statement to violate a defendant's *Bruton* rights, it must 'facially, expressly, clearly, or powerfully implicate []the defendant.'").

Rule 14(b) states that "[b]efore ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's

23

statement that the government intends to use as evidence." The Government has not indicated whether it intends to introduce statements made by Defendant Benzer during his proffer sessions even if Defendant Benzer does not testify at trial. Obviously, if the Government does introduces such statements, *Bruton* issues could arise. Defendant Gregory's assertion that the Government may introduce statements made by Benzer which tend to prove that a conspiracy existed, and which the Government will use to establish elements of the conspiracy, however, does not indicate a violation of confrontation rights because such statements do not necessarily facially, expressly, clearly and powerfully implicate Defendant Gregory. On the other hand, an alleged statement by Defendant Benzer that he paid a $10,000 bribe to Gregory would clearly appear to be inadmissible in a joint trial in which Benzer does not testify. By seeking to try Defendants jointly, the Government, as well as the Court, accepts the responsibility that some evidence that could be introduced against Defendant Benzer or other defendants in a separate trial will not be admissible in the joint trial unless it can be adequately redacted to avoid violation of the co-defendants' Sixth Amendment rights.[4]

In response to Defendant Benzer's Motion for Relief from Prejudicial Joinder of Defendants For Trial (#389), the Government identified by page and line number those portions of statements made by co-defendants to undercover agents that it intends to introduce at trial. Although Defendant Benzer is not satisfied with the adequacy of the Government's identification, it would assist in resolving *Bruton* issues and the possible need for severance, for the Government to also identify to Defendants and the Court, *in camera*, those portions of Defendant Benzer's proffer statements, if any, that the Government intends to use at trial even if Defendant Benzer does not testify. The Government should also provide its proposed redactions of the statements as necessary to avoid *Bruton* violations. Defendants will then have the opportunity to object if they believe the statements, as redacted by the Government, violate their confrontation rights or are otherwise

---

[4] Redaction does not cure a *Bruton* violation if the redacted statement still obviously refers to the co-defendant. *Gray v. Maryland*, 523 U.S. at 196, 118 S.Ct. at 1157; *United States v. Peterson*, 140 F.3d 819, 821-822 (9th Cir. 1998); *United States v. Mayfield*, 189 F.3d 895, 902 (9th Cir. 1999); and *United States v. Johnson*, 297 F.3d 845, 856-57 n. 4 (9th Cir. 2002).

1    inadmissible.  *See United States v. Hernandez-Orellana*, 539 F.3d at 1000-01.

2        **E.    Defendant Gregory's Request to File the Benzer Proffers Under Seal In
         Support of His Motion to Sever.**

3        On the date set for hearing on Defendant Gregory's motion to sever, he moved to file

4    Defendant Benzer's proffers under seal, arguing that they needed to be considered by the Court in

5    deciding his motion to sever.  The Government objected to this motion on the grounds that it was

6    untimely.  The Court finds that it is unnecessary to consider the Benzer proffers in some general

7    manner in regard to whether Defendant Gregory's trial should be severed from that of Defendant

8    Benzer.  The Court is aware of the disparity in evidence against Defendant Benzer as compared to

9    that against Defendant Gregory.  In a separate trial, however, that same evidence would also

10   generally be admissible against Defendant Gregory to prove the existence of the alleged conspiracy

11   and his alleged participation in it.  *Bruton* issues arising from the introduction of testimonial

12   statements of non-testifying defendants, and which implicate or potentially implicate co-

13   defendants, can be resolved once the Government identifies any such statements and how those

14   statements will be redacted, if necessary.

15                                    **CONCLUSION**

16       Based on the foregoing, the Court finds that Defendant Gregory has not met his burden to

17   show that severance of his trial is required in this case.  Accordingly,

18       **IT IS HEREBY ORDERED** that Defendant Keith Gregory's Motion to Sever Trial With

19   Co-Defendant Leon Benzer (#328) is **denied**, without prejudice.

20       **IT IS FURTHER ORDERED** that the Government shall notify Defendants at least 30

21   days before trial whether it intends to introduce statements made by Defendant Benzer in his

22   proffers even if Benzer does not testify.  If the Government intends to introduce such statements, it

23   shall inform the Defendants and the Court, *in camera*, of the substance of the statements and of any

24   redactions thereof as necessary.

25       **IT IS FURTHER ORDERED** that Defendant Gregory's Motion to Allow Defendant Keith

26   Gregory Through and Including September 26, 2014 to File a Motion to Allow the Filing of the

27   Leon Benzer Proffers Under Seal (#356), Defendant Gregory's Motion to Seal Proffers Made by

28

Leon Benzer (#368), and Defendant Gregory Motion for Leave to File a Supplemental

Memorandum in Support of His Motion to Seal the Proffers Made by Leon Benzer (#413) are

**denied**.

      **IT IS FURTHER ORDERED** that all documents filed under seal in support of these

motions shall remain sealed.

      DATED this 8th day of December, 2014.

GEORGE FOLEY, JR.
United States Magistrate Judge

26