1

2

3

4      UNITED STATES DISTRICT COURT

5      DISTRICT OF NEVADA

6      * * *

7   UNITED STATES OF AMERICA,              Case No. 2:13-CR-18 JCM (GWF)

8                              Plaintiff(s),              ORDER

9          v.

10  LEON BENZER, et al.,

11                            Defendant(s).

12

13         Presently before the court is defendant Edith Gillespie's ("Gillespie") motion for a

14  judgment of acquittal. (Doc. # 557). The government filed a response, (doc. # 577), and Gillespie

15  filed a reply, (doc. # 578).

16         Also before the court is defendant Keith Gregory's ("Gregory") motion for a judgment of

17  acquittal. (Doc. # 558). Gillespie filed a motion for joinder to Gregory's motion for acquittal,

18  (doc. # 559), and an amended motion for joinder, (doc. # 560). Defendants David Ball ("Ball")

19  and Salvatore Ruvolo ("Ruvolo") also filed motions for joinder to Gregory's motion for acquittal.

20  (Docs. # 561, 571). The government filed a response to Gregory's motion and the motions for

21  joinder, (doc. # 575), and Gregory filed a reply, (doc. # 595).

22  **I.    Background**

23         The facts of the instant case are familiar to the court and the parties. On February 25, 2015,

24  Gillespie, Gregory, Ball, and Ruvolo (collectively "defendants") proceeded to trial on charges of

25  conspiracy, wire fraud, and mail fraud.

26         On Wednesday March 11, 2015, the government rested its case. Outside the presence of

27  the jury, Gillespie's counsel made an oral Rule 29(a) motion for a judgment of acquittal based on

28  sufficiency of the evidence. Gillespie's counsel argued in support of the motion. The government

**James C. Mahan**
**U.S. District Judge**

1  responded, stating its reasons for opposing the motion.  The court denied the motion in open court,

2  but stated that Gillespie could renew her motion at a later date.  (Docs. # 538, 590).

3       On the same date, Gregory's counsel made a Rule 29(a) motion for a judgment of acquittal

4  regarding the sufficiency of the evidence as to count 10.  The government responded to the

5  arguments and the court denied the motion.  Ruvolo's counsel also reserved his right to make a

6  Rule 29(a) motion at a later time.  (Docs. # 538, 590).

7       On March 13, 2015, defendant Ruvolo rested his case, concluding all defense evidence.  At

8  that time, Ball's counsel made a Rule 29(a) motion for a judgment of acquittal based on sufficiency

9  of the evidence.  Counsel for all other defendants renewed their Rule 29(a) motions, and Gregory's

10  counsel added the additional charges against him to the initial motion on count 10.  The court

11  denied the motions and again informed counsel that they could renew their motions later if

12  necessary.  (Docs. # 532, 592).

13       On March 17, 2015, the jury found defendants guilty of the conspiracy and wire fraud

14  counts against them.  (Doc. # 537).  Defendants then filed the instant motions.

15  **II.    Legal Standards**

16      **A.  Motion for a judgment of acquittal**

17       A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days

18  after a guilty verdict.  Fed. R. Crim. P. 29(c).  Such a motion is reviewed for sufficiency of the

19  evidence.  *United States v. Stoddard*, 150 F.3d 1140, 1144 (9th Cir. 1988).

20       "The standard of review for determining the sufficiency of the evidence is whether, after

21  viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

22  have found the essential elements of the crime beyond a reasonable doubt."   *United States v.*

23  *Inzunza*, 638 F.3d 1006, 1013 (9th Cir. 2009) (emphasis in original) (internal quotation marks

24  omitted) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979) (explaining that "the critical

25  inquiry" is "whether the record evidence could reasonably support a finding of guilt beyond a

26  reasonable doubt")).

27

28

**James C. Mahan**
**U.S. District Judge**

1  "[The] district court must bear in mind that it is the exclusive function of the jury to

2  determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable

3  inferences from proven facts." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002).

4  "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."

5  *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992).

6  **B.  Motion for a new trial**

7  "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if

8  the interest of justice so requires." Fed. R. Crim. P. 33(a). "A motion for a new trial is directed to

9  the discretion of the district judge.  It should be granted only in exceptional cases in which the

10  evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545

11  (9th Cir. 1981) (citation and internal quotation marks omitted).

12  **III.    Discussion**

13  The court will first discuss Gillespie's motion for a judgment of acquittal, followed by

14  Gregory's motion and the accompanying motions for joinder.

15  **A.  Gillespie's motion**

16  In her motion, Gillespie contends that she is entitled to a judgment of acquittal on all counts

17  of the indictment against her.  Alternatively, Gillespie asks the court to order a new trial.

18  Gillespie argues that the evidence against her was insufficient to sustain a conviction.  She

19  also argues that the government committed a *Brady* violation.  The court will address each of

20  Gillespie's arguments in turn.

21  **a.  Sufficiency of the evidence**

22  Gillespie argues that the evidence at trial was insufficient to support a conviction for each

23  charge against her.  Specifically, Gillespie contends that she was convicted based on "innuendo,

24  suggestion, circumstance, family relationship, and failure to sever ties from the other co-

25  defendants." (Doc. # 557).

26  Gillespie was convicted of one count of conspiracy and one count of wire fraud.  The

27  sufficiency of the evidence as to each charge will be addressed in turn.

28

**James C. Mahan**
**U.S. District Judge**

### 1.  Conspiracy

Gillespie contends that the evidence against her at trial was insufficient to support her conviction under count one for conspiracy to commit mail and wire fraud.  (Doc. # 557).

To sustain a conspiracy conviction, the government must prove: "(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime."  *United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004) (citation and internal quotation marks omitted).  "After a conspiracy is established, proof of the defendant's connection to the conspiracy must be shown beyond a reasonable doubt, but the connection can be slight."  *Id.*

Having heard the evidence at trial and reviewed the evidence in light of the standard above, the court finds that Gillespie's contention is without merit.  The testimony of numerous co-conspirators and the evidence at trial clearly provided a sufficient basis for the jury to find that a conspiracy existed here.  Further, the government produced sufficient evidence for the jury to conclude that Gillespie acted as a straw purchaser with intent to further the conspiracy.  The government attaches portions of the relevant evidence to its response, including transcripts of the testimony of witnesses Anthony Wilson ("Wilson") and Dominic Rucci ("Rucci"), as well as accompanying exhibits.  (Doc. # 577).

At trial, Wilson and Rucci testified about their involvement in assisting Gillespie with obtaining a loan to purchase a condominium funded by and at the request of co-conspirator Leon Benzer ("Benzer").  Wilson specifically testified that he told Gillespie about Benzer's takeover plan at the Manhattan HOA.  Wilson also stated that he helped Gillespie fill out her loan application, which falsely reported that she worked at Silver Lining Construction ("SLC"), Benzer's company.  Wilson testified that he discussed how to verify this false employment with Gillespie.  He also testified about details surrounding payments to Gillespie and her friend, Christine Cabingas, in exchange for their condominium investments on Benzer's behalf.  (Doc. # 577).

**James C. Mahan**
**U.S. District Judge**

- 4 -

1    Rucci stated that he obtained the employment information on Gillespie's loan application

2    from her directly, and that she signed the loan application attesting that she received $8,900 per

3    month working at SLC.   The government also introduced exhibits evidencing payments to

4    Gillespie and her husband, as well as an email from Gillespie to Benzer requesting a list of

5    questions for a board meeting that her friend Stephanie Markham ("Markham") was attending.

6    (Doc. # 577).

7        In support of her motion, Gillespie cites the testimony of Ed Lugo ("Lugo"), Ralph Priola

8    ("Priola"), and Marcella Triana ("Triana"), who stated that Benzer never told Gillespie about the

9    conspiracy.   Gillespie also points to her handwriting expert's testimony regarding forged or

10   "fraudulent" exhibits.   Gillespie suggests that because the government failed to refute this

11   evidence, a reasonable jury could not convict her of conspiracy.  (Docs. # 557, 578).

12       Further, Gillespie believes that the government mischaracterized payments she received

13   from Benzer, because Benzer provided Gillespie with financial assistance for a number of years.

14   Gillespie also notes the fact that she claimed her referral fee back on her taxes, in an attempt to

15   show that she did not know the conduct at issue was fraudulent.  (Doc. # 578).

16       The jury in this case heard the evidence and was entitled to weigh the credibility of all

17   witnesses and information produced in the case.  The evidence was not insufficient for the jury to

18   convict Gillespie of conspiracy.  The government adequately proved that Gillespie knew of at least

19   one of the objects of the conspiracy and intended to help accomplish it.

20       Further, the court properly instructed the jury regarding the law that applies in this case.

21   The jury was informed of the elements of each charge, what evidence it may properly consider,

22   and the definition of reasonable doubt.  Moreover, the court specifically instructed the jury that it

23   was required to decide each defendant's case separately, and that mere association is insufficient

24   to convict.

25       Overall, the evidence presented at trial was sufficient for a reasonable jury to find that

26   Gillespie knowingly executed the loan documents at issue to perpetrate fraud as intended by the

27   conspiracy.  Accordingly, the court will not grant acquittal or a new trial based on insufficient

28

**James C. Mahan**
**U.S. District Judge**

1  evidence as to the conspiracy charge.  The court will now turn to the sufficiency of the evidence

2  presented at trial as to wire fraud.

3  ### 2.  Wire fraud

4  Gillespie also challenges the sufficiency of the evidence against her as to her conviction

5  under count seven for wire fraud.  (Doc. # 557).

6  To prove that a defendant committed wire fraud in violation of 18 U.S.C. § 1343, the

7  government must show that the following elements are met: "(1) the existence of a scheme to

8  defraud; (2) the use of wire, radio, or television to further the scheme; and (3) specific intent to

9  defraud." *United States v. Pelisamen*, 641 F.3d 399, 409 (9th Cir. 2011).

10  As above, the court finds that this argument does not warrant a judgment of acquittal.  The

11  government presented sufficient evidence at trial for the jury to find Gillespie guilty of wire fraud.

12  The above-mentioned testimony supports this conclusion.  Further, Gillespie's own handwriting

13  expert confirmed that her signature appeared on the final loan application.  The evidence at trial

14  showed that Gillespie made false statements on her loan application, including representing that

15  she worked at SLC and that she provided the down payment for the Chateau Versailles

16  condominium from her own checking or savings account, despite this funding actually coming

17  from Benzer.

18  Gillespie argues that a reasonable jury could not convict her of wire fraud in light of the

19  testimony of Rucci and Mahin Quintero ("Quintero").  Gillespie points out that these individuals

20  admitted to doctoring Gillespie's mortgage application.  (Doc. # 557).  Again, this determination

21  is properly reserved for the jury, and the court finds that the evidence was sufficient to convict

22  Gillespie of the wire fraud charge against her.

23  Based on the foregoing, the court finds that the evidence at trial was sufficient such that a

24  rational jury could find Gillespie guilty beyond a reasonable doubt of conspiracy and wire fraud.

25  Gillespie's motion will therefore not be granted on the grounds of insufficient evidence.  The court

26  will now examine Gillespie's contention that the government committed a *Brady* violation.

27  . . .

28  . . .

**James C. Mahan**
**U.S. District Judge**

- 6 -

1

                        **b.  *Brady* violation**

2          "The government violates its constitutional duty to disclose materially exculpatory

3  evidence where (1) the evidence in question is favorable to the accused in that it is exculpatory or

4  impeachment evidence, (2) the government willfully or inadvertently suppresses this evidence,

5  and (3) prejudice ensues from the suppression (i.e., the evidence is 'material')." *Silva v. Brown*,

6  416 F.3d 980, 985 (9th Cir. 2005).

7          "A defendant is denied due process if the prosecution suppresses *Brady* material, which is

8  evidence both favorable to an accused and material to either guilt or punishment." *United States*

9  *v. Dupuy*, 760 F.2d 1492, 1501 n.3 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  However,

10  "[w]here . . . a defendant has enough information to be able to ascertain the supposed *Brady*

11  material on his own, there is no suppression by the government."  *United States v. Aichele*, 941

12  F.2d 761, 764 (9th Cir. 1991).

13          "The mere possibility that an item of undisclosed information might have helped the

14  defense, or might have affected the outcome of the trial, does not establish 'materiality' in the

15  constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109 (1976).  Instead, *Brady* requires

16  that there be "a reasonable probability that, had the evidence been disclosed to the defense, the

17  result of the proceeding would have been different."  *Silva*, 416 F.3d at 985 (quoting *Kyles v.*

18  *Whitley*, 514 U.S. 419, 433 (1995)).

19          Gillespie contends that the government's failure to turn over an FBI 302 interview of

20  Angela Holland ("Holland") constitutes a *Brady* violation.  This evidence relates to the testimony

21  of Gillespie's husband, Michael Comer ("Comer"), given during Gillespie's case-in-chief.  (Doc.

22  # 557).

23          On direct examination, Comer testified that he knew Benzer to be an "upstanding

24  businessman."  On cross-examination of Mr. Comer, the government introduced evidence in an

25  attempt to impeach Comer's testimony regarding his opinion of Benzer.  (Doc. # 590).

26          The government first questioned Comer regarding his knowledge that Benzer "had the

27  ability to deal with parking tickets."  Comer testified that he knew this, and that Benzer once

28  resolved a traffic ticket for him.  The government then introduced an email from Triana, Benzer's

**James C. Mahan**
**U.S. District Judge**

1   assistant, to Holland, a Clark County court employee, regarding Comer's traffic ticket.  Comer

2   stated that he had never seen the email.  (Doc. # 590).

3          Gillespie now states that the government improperly failed to disclose an FBI 302 relating

4   to an interview of Holland.  Gillespie asserts that "[t]he use of Holland's email came as a surprise

5   as it was not a listed exhibit and no FBI 302's regarding this 'ticket fixing scheme' had been

6   produced."  (Doc. # 557).

7          Gillespie's argument fails under each *Brady* prong.  The court finds that the evidence is

8   not material to the charges against Gillespie, nor has she shown how it could be exculpatory.

9          The government used the evidence at issue on cross-examination, to impeach Gillespie's

10  witness.  Nothing before the court suggests that an FBI interview of Holland, the court employee

11  who allegedly fixed Comer's traffic ticket, would provide any evidence that would change the

12  result at trial or prove material to Gillespie's defense.  Evidence that Benzer fixed parking tickets

13  is entirely unrelated to the charges against Gillespie.

14         Moreover, the court finds that the material at issue was not suppressed.  In her motion,

15  Gillespie contends that she never received any documents related to the traffic ticket scheme

16  through discovery.  (Doc. # 557).  In its response, the government contests this point, stating that

17  it disclosed numerous FBI 302s of other witnesses, including Triana.  (Doc. # 577).

18         The government notes that, among other documents addressing this subject, Triana's FBI

19  302 included information about the traffic ticket fixing investigation and specifically described

20  Holland's role.  The government also contends that it produced the email at issue almost a year

21  before trial, thus providing Gillespie ample notice regarding the traffic ticket investigation.  (Doc.

22  # 577).  On reply, Gillespie does not contest or in any way respond to these representations by the

23  government.  (Doc. # 578).

24         Based on the foregoing, the court cannot find that the FBI 302 at issue was suppressed by

25  the government.  In any case, the evidence would not have been material or exculpatory as to the

26  charges against Gillespie.  Accordingly, the court finds no *Brady* violation in this case, and

27  Gillespie is not entitled to a judgment of acquittal or a new trial on these grounds.  Because the

28  court concludes that both of Gillespie's arguments in support of her motion are without merit, the

**James C. Mahan**
**U.S. District Judge**

1   court will deny the motion and proceed to consider Gregory's motion and the related motions for

2   joinder.

3         **B.  Gregory's motion**

4         Gregory advances a number of arguments in support of his motion for acquittal.  (Doc. #

5   558).  Defendants Gillespie, Ball, and Ruvolo seek to join Gregory's motion, asserting certain

6   additional arguments as to the charges against them.  (Docs. # 560, 561, 571).

7         The government's response to Gregory's motion addresses the merits of Gregory's motion

8   as to all four defendants.  (Doc. # 575).  Accordingly, the court will consider, in turn, whether each

9   argument set forth in Gregory's motion provides meritorious grounds for a judgment of acquittal.[1]

10        The court will first address the merits of Gregory's argument, and the other defendants'

11   joinder to his argument, that acquittal is appropriate for the wire fraud convictions at issue in this

12   case.  The court will then turn to defendants' arguments as to their conspiracy convictions.

13                          *i.      Wire fraud*

14        In their motions, defendants contend that acquittal is appropriate as to their wire fraud

15   convictions because the government failed to prove that their conduct "affected a financial

16   institution."  Relatedly, defendants argue that their wire fraud convictions were barred by the

17   applicable statute of limitations.  (Doc. # 558).  The court will address these arguments in

18   succession.

19                    **a.  Wire fraud affecting a financial institution**

20        Defendants contend that they are entitled to acquittal on the wire fraud charges against

21   them because the government failed to show an effect on a financial institution.  This argument

22   misconstrues the controlling statutes and is accordingly without merit.

23        A judgment of acquittal is not appropriate simply because the government did not prove at

24   trial that defendants' conduct affected a financial institution.  Effect on a financial institution is

25   not a necessary element of standard wire fraud.  *See* 18 U.S.C. § 1343 ("If the violation . . . affects

26   _____

27        [1] Because the court's rulings do not differ for particular counts, the court will not reference
     or discuss in detail the particular counts that defendants seek to challenge through the instant
28   motions.  The conclusions in this order pertain to all four defendants, and all counts against them,
     as applicable.

**James C. Mahan**
**U.S. District Judge**

1    a financial institution . . . ."); *see also* Ninth Cir. Model Crim. Jury Instr. 8.124 (2015).  Rather,

2    wire fraud affecting a financial institution is a more severe crime requiring proof of an additional

3    element.

4           Whether a defendant's conduct is proven to affect a financial institution merely dictates the

5    applicable statute of limitations and statutory maximum sentence and fine.  *See* 18 U.S.C. §§ 1343,

6    3293.  Where the government fails to prove that the conduct at issue affected a financial institution,

7    the penalty for wire fraud is limited to 20 years imprisonment.  *See* 18 U.S.C. § 1343.

8           In order for defendants to be convicted of the enhanced wire fraud category, the jury would

9    have to find beyond a reasonable doubt that their conduct affected a financial institution.  *See*

10   *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (providing that "any fact that increases the

11   penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

12   proved beyond a reasonable doubt"); *Jones v. United States*, 526 U.S. 227, 251-52 (1999) (holding

13   that a statutory aggravating circumstance constitutes an offense element for purposes of conviction

14   and sentence); *see also United States v. Ubakanma*, 215 F.3d 421, 425-27 (4th Cir. 2000)

15   (confining defendant's sentence to statutory maximum for ordinary wire fraud where effect on a

16   financial institution was not shown).

17          Defendants cite *Apprendi*, *Jones*, and *Ubakanma* in support of their argument that the

18   government must prove that their conduct affected a financial institution.  Defendants contend that

19   these cases have "explicitly preempted" the government's argument that it need not prove an effect

20   on a financial institution.  (Doc. # 595).

21          Defendants misread the effect of this case law.  *Apprendi* and *Jones* support the conclusion

22   that in order to hold a defendant liable for wire fraud affecting a financial institution, the

23   government must prove, and the jury must find beyond a reasonable doubt, that the defendant's

24   conduct had such an effect.  However, defendants were not convicted of this higher penalty

25   offense.  Accordingly, the court finds that these cases are distinguishable.  Defendants are not

26   entitled to acquittal merely because the jury was not asked to find that their conduct affected a

27   financial institution.

28

**James C. Mahan**
**U.S. District Judge**

1      To the extent that defendants argue that acquittal is appropriate because the indictment in

2   this case charged them with wire fraud affecting a financial institution rather than ordinary wire

3   fraud, this argument is similarly unconvincing.

4      The parties appear to agree that standard wire fraud is a lesser included offense of wire

5   fraud affecting a financial institution.  (Docs. # 575, 595).  However, as the government notes,

6   Federal Rule of Criminal Procedure 31 provides that "[a] defendant may be found guilty of . . . an

7   offense necessarily included in the offense charged . . . ."  Fed. R. Crim. P. 31(c)(1).  Accordingly,

8   the fact that defendants were indicted for wire fraud affecting a financial institution does not

9   preclude their convictions for ordinary wire fraud.

10      The court will therefore proceed to discuss defendants' argument that the applicable statute

11   of limitations barred the indictment against them.

12                                   **b.  Applicable statute of limitations**

13      A wire fraud conviction under 18 U.S.C. § 1343 is generally subject to the five-year statute

14   of limitations in 18 U.S.C. § 3282.  However, 18 U.S.C. § 3293 provides that where the

15   government proves that the wire fraud affects a financial institution, a ten-year statute of

16   limitations applies.

17      While the indictment in this case alleged that defendants committed wire fraud "that

18   affected a financial institution," the government concedes that "the jury was not asked to find

19   whether defendants' conduct affected a financial institution."  (Doc. # 575).  The parties therefore

20   seem to agree that the five-year statute of limitations applies to the wire fraud charges at issue.

21   (Docs. # 558, 575).

22      Assuming that the five-year statute of limitations for ordinary wire fraud applies to the

23   instant convictions, the relevant conduct for some counts occurred outside the applicable statute

24   of limitations.  Defendants were indicted on January 15, 2013, thus placing any conduct on dates

25   before January 15, 2008, outside the relevant five-year period.  (Doc. # 1).

26      Nevertheless, the government argues that defendants waived any statute of limitations

27   argument by failing to make it at trial.  The court will now proceed to address the issue of waiver.

28

**James C. Mahan**
**U.S. District Judge**

- 11 -

1

### c. Waiver

2    "[S]tatute of limitations is an affirmative defense that is waived if it is not raised at trial

3    . . . ." *United States v. Hickey*, 580 F.3d 922, 928 n.1 (9th Cir. 2009).

4        Defendants argue that they did not waive their statute of limitations argument because they

5    were not aware that the charges were subject to the shorter five-year statute of limitations until

6    after trial.  (Doc. # 595).  "[A] defendant's failure to raise a statute of limitations defense in the

7    trial court does not result in waiver if raising the defense would have been futile." *United States*

8    *v. Wilbur*, 674 F.3d 1160, 1177 (9th Cir. 2012) (citing *United States v. Manning*, 56 F.3d 1188,

9    1195 (9th Cir. 1995)).

10        Defendants essentially contend that because the indictment included the "affects a financial

11   institution" language, they assumed the ten-year statute of limitations applied.   Defendants

12   therefore assert that they did not know the statute of limitations defense existed until after trial was

13   over.  (Doc. # 595).

14        This argument is unconvincing.  To the extent that defendants were unaware of any statute

15   of limitations argument when trial commenced, defendants should have raised these issues after

16   the government presented its case-in-chief or at the close of all evidence.  *See Hickey*, 580 F.2d at

17   928 n.1 (finding that defendant waived defense that "the conduct that resulted in [defendant's]

18   conviction" exceeded statute of limitations by failing to raise it at trial).

19        Defendants were charged with and convicted of wire fraud.  Defendants failed to raise the

20   statute of limitations affirmative defense before trial or at trial after the close of evidence.  Based

21   on these facts and the above case law, the court finds that defendants waived any statute of

22   limitations argument by failing to raise it at trial.[2]

23

24   _____

25       [2] The government also notes that certain defendants' Rule 29 motions at trial were made
     based on sufficiency of the evidence only.  (Docs. # 590, 592).  The government cites Ninth Circuit
26   case law holding that arguments not asserted in a defendant's Rule 29 motion are deemed waived.
     *See United States v. Quintana-Torres*, 235 F.3d 1197, 1199 ("This ground was not advanced when
27   [defendant] made his motion for acquittal on one specified ground.  The objection now advanced
     was waived.").  The court is not convinced that this rule applies at the district court level where
28   defense counsel makes an oral Rule 29 motion and later asserts additional grounds in a written
     motion.  Nevertheless, the court need not decide whether the rule presented in *Quintana-Torres*
     applies here, as the court finds that any statute of limitations arguments are waived.

**James C. Mahan**
**U.S. District Judge**

- 12 -

1          **d.  Lesser-included offense**

2          Defendants argue that "where the period of limitation for the crime charged has not expired,

3    but has expired for a lesser offense included therein, a defendant cannot be convicted of such lesser

4    offense."  Defendants cite numerous state court cases in support of this contention, none of which

5    are controlling on this court.  (Doc. # 595).

6          The court finds the Ninth Circuit's holding in *United States v. DeTar*, 832 F.2d 1110 (9th

7    Cir. 1987) to be instructive here.  In *DeTar*, the defendant requested a jury instruction on certain

8    lesser-included offenses, but later argued in a motion for a judgment of acquittal that the statute of

9    limitations had run for these offenses.  *Id.* at 1113.

10         The court first noted that the statute of limitations is not jurisdictional, and that it is an

11   affirmative defense that is waived if not asserted at or before trial.  *Id.* at 1114.  The court then

12   held that the defendant had waived his statute of limitations  argument by requesting the applicable

13   instruction.  *Id.* at 1115 ("[A] defendant who requests an instruction on a lesser included offense

14   cannot avail himself of a limitations defense for that included offense."); *see also United States v.*

15   *Williams*, 684 F.2d 296, 299-300 (4th Cir. 1982) (holding that defendant waived statute of

16   limitations by requesting and obtaining lesser included offense instruction, pursuant to which he

17   was convicted).

18         Similarly, here, defendants and the government jointly proposed the wire fraud instruction

19   at issue.  (Doc. # 544).  Further, the court gave the parties multiple opportunities to present

20   objections to the jury instructions in this case, and defendants never raised their statute of

21   limitations arguments or requested changes.  Defendants benefitted from the court's instruction to

22   the jury on the lesser wire fraud offense in that a lower statutory maximum applies.  *See DeTar*,

23   832 F.2d at 1115 (reasoning that there is "no reason to deprive a defendant of the benefit of an

24   appropriate lesser included offense instruction if he waives his defense of limitations").

25   Defendants cannot now take issue with the instruction on statute of limitations grounds.

26         The court will now discuss the invited error doctrine as it applies to this case.

27   . . .

28   . . .

**James C. Mahan**
**U.S. District Judge**

1

**e.  Invited error**

2      The government also addresses the invited error doctrine, contending that defendants are

3  precluded from arguing that any error existed in the court's instructions to the jury because the

4  parties agreed on the proposed instructions submitted to the court.   Defendants appear to

5  misinterpret the government's argument, responding that the invited error doctrine does not excuse

6  the government from proving an element of its case.  (Doc. # 595).

7      While defendants' notion is correct, the court has already clarified that effect on a financial

8  institution is not a requisite element of wire fraud under 18 U.S.C. § 1343.  Therefore, the court

9  does not find that the government failed to prove a basic element of the offense of conviction.

10      The court does not read defendants' motions to argue that any jury instructions given in

11  this case were erroneous.  Nevertheless, to the extent that defendants do suggest any such error,

12  numerous courts have held that the invited error doctrine precludes this type of objection.  *See,*

13  *e.g.*, *Jones v. United States*, 527 U.S. 373, 388 (1999) (holding that objection to jury instruction

14  after jury retired was untimely and thus subject to plain error review); *Leavitt v. Arave*, 383 F.3d

15  809, 847 (9th Cir. 2004) (finding that defendant invited any error in jury instruction by requesting

16  said instruction in the form it was given); *United States v. Butler*, 74 F.3d 916, 918 n.1 (9th Cir.

17  1996) (refusing to address argument that lesser included offense instruction was erroneous where

18  defendant's counsel requested and helped draft it); *see also United States v. DeRosier*, 501 F.3d

19  888, 898-99 (8th Cir. 2007) (refusing to find plain error in conviction for wire fraud affecting a

20  financial institution where defendant's own proposed jury instructions did not include effect

21  element and defendant did not object to jury instructions as given at trial).

22      The wire fraud instruction as charged to the jury was jointly requested by both sides in this

23  case.  (Doc. # 544).  The court adopted this instruction verbatim, in accordance with the Ninth

24  Circuit model instructions.  Neither party requested that the court instruct the jury on the additional

25  element of effect on a financial institution, nor did the parties request an instruction for lesser

26  included offenses.[3]

27  _____

28      [3] Notably, as the government points out, the lesser included offense instruction was
unnecessary in light of the fact that the jury received the standard wire fraud instruction only, not
an instruction for the greater offense of wire fraud affecting a financial institution.  (Doc. # 575).

**James C. Mahan**
**U.S. District Judge**

- 14 -

1    As previously noted, the court does not find error in the jury instructions, nor does any

2    party appear to argue error in this case.  Nevertheless, the court finds that any such argument would

3    be unsuccessful on invited error grounds.

4    The court will now discuss defendants' arguments that their conspiracy convictions

5    exceeded the applicable statute of limitations.

6    ii.    *Conspiracy*

7    In their motions for joinder, Ball, Gillespie, and Ruvolo contend that they are entitled to a

8    judgment of acquittal on their conspiracy convictions based on the applicable statute of limitations.

9    (Docs. # 560, 561, 571).

10    As the court found with the wire fraud convictions in this case, failure to assert these statute

11    of limitation defenses at trial resulted in their waiver.  Moreover, as the government argues, the

12    court finds that defendants' statute of limitations arguments as to the conspiracy charges are

13    substantively meritless.  (Doc. # 575).

14    So long as some overt act in furtherance of the conspiracy occurred within the applicable

15    period, a conspiracy conviction does not raise statute of limitations issues.  *United States v. Wilbur*,

16    674 F.3d 1160, 1171 (9th Cir. 2012).  "[A] conspiracy continues until there is affirmative evidence

17    of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy."  *Id.* at 1176

18    (citation and internal quotation marks omitted); *see also* Ninth Cir. Model Crim. Jury Instr. 8.24

19    (2015).  The defendant has the burden of proving that he withdrew from the conspiracy.  *See Smith*

20    *v. United States*, 133 S. Ct. 714, 719 (2013).

21    The charging indictment in this case alleged that defendants participated in a conspiracy

22    continuing through February 2009.  (Doc. # 1).  At trial, the government proved at least one overt

23    act occurring within the statute of limitations.[4]    Based on the evidence, the jury convicted

24

25

26    [4] For example, the jury found Gregory guilty of count 15 alleging wire fraud.  The underlying conduct for this count involved Gregory sending an email to Benzer regarding a petition for recall at the Sunset Cliffs HOA.  (Doc. # 1).  This incident is also listed as an overt act

27    in furtherance of the conspiracy under count 1, and it occurred on September 18, 2008, within the applicable statute of limitations.  The court therefore finds that the government provided sufficient

28    proof at trial of at least one overt act within the statute of limitations.  This is adequate to sustain the conspiracy convictions against defendants' statute of limitations arguments.

**James C. Mahan**
**U.S. District Judge**

- 15 -

1  defendants of the conspiracy charges against them in count one.  Defendants have not provided, at

2  trial or through the instant motions, any evidence of withdrawal.  Accordingly, defendants' statute

3  of limitations argument does not provide grounds for acquittal as to their conspiracy convictions.[5]

4       The court has reviewed defendants' arguments, and the government's response, regarding

5  Gregory's motion for a judgment of acquittal.  Based on the foregoing, the court finds that

6  defendants fail to show grounds for acquittal of their wire fraud and conspiracy convictions.

7  Accordingly, the court will deny Gregory's motion.

8       The court has addressed the substance of Gregory's motion as to each defendant and

9  concluded that all of the arguments contained therein lack merit.  In light of the court's holding

10  that Gregory's motion does not provide grounds for acquittal as to any defendant, the court finds

11  that it would be futile to grant the remaining defendants' motions for joinder.  The court will

12  therefore deny defendants' motions for joinder as moot.

13  **IV.   Conclusion**

14       Accordingly,

15       IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Edith

16  Gillespie's motion for a judgment of acquittal, (doc. # 557), be, and the same hereby is, DENIED.

17       IT IS FURTHER ORDERED that defendant Keith Gregory's motion for a judgment of

18  acquittal, (doc. # 558), be, and the same hereby is, DENIED.

19       IT IS FURTHER ORDERED that defendant Edith Gillespie's motions for joinder, (docs.

20  # 559, 560), be, and the same hereby are, DENIED as moot.

21       IT IS FURTHER ORDERED that defendant David Ball's motion for joinder, (doc. # 561),

22  be, and the same hereby is, DENIED as moot.

_____

25  [5] According to the government, the evidence at trial also showed that Ball and Ruvolo
26  committed overt acts within the statute of limitations.  (Doc. # 575).  Because the court finds that
the government proved other overt acts in furtherance of the conspiracy, the court need not address
this additional argument.  However, the court notes that Ball and Ruvolo were convicted of count
27  13.  The underlying conduct for this count occurred on March 5, 2008, and was further listed in
the indictment as an overt act for purposes of count 1.  (Doc. # 1).  Because this conduct occurred
28  within the statute of limitations, it provides an additional basis for upholding Ball and Ruvolo's
conspiracy convictions.

**James C. Mahan**
**U.S. District Judge**

- 16 -

1       IT IS FURTHER ORDERED that defendant Salvatore Ruvolo's motion for joinder, (doc.

2    # 571), be, and the same hereby is, DENIED as moot.

3       DATED May 13, 2015.

4

5           _____
              UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 17 -